[No. 55370-4-I.   Division One.   August 29, 2005.]

JAMES L. CAWDREY, *as Personal Representative, Appellant,* v. HANSON BAKER LUDLOW DRUMHELLER, P.S., ET AL., *Respondents.*

---

[13] *Butler,* 118 Wn.2d at 391.

*Marc L. Silverman*; and *Philip A. Talmadge* (of *Talmadge Law Group, P.L.L.C.*), for appellant.

*Kirsten A. Schultz* (of *Lee Smart Cook Martin & Patterson, P.S., Inc.*), for respondents.

¶1 AGID, J. — Elizabeth Cawdrey, her son Dan Cawdrey, and Dan's wife Lillian were partners in L&M Partners, a general partnership.[1] Andree Chicha, an attorney who had previously represented both L&M and Elizabeth in a variety of legal matters, assisted with two business transactions between Elizabeth and L&M. When one of Elizabeth's other children discovered these transactions and learned they had caused a significant decrease in Elizabeth's assets, Elizabeth sued Chicha for legal malpractice. The trial court dismissed the case on summary judgment, and James Cawdrey, as personal representative of his mother's estate, appeals. Because neither the discovery rule nor the continuous representation rule tolled the statute of limitations, Elizabeth's case is time-barred and we affirm.

## FACTS

¶2 Elizabeth and James Cawdrey, Sr., divorced in 1990, when Elizabeth was 73 years old. Elizabeth received approximately $1.2 million in cash and property from the dissolution. In 1994, James died, and left each of the six Cawdrey children vastly different inheritances.[2]

¶3 L&M Partners is a general partnership that develops real estate. As of 1992, Elizabeth and Lillian, Dan's wife, were the sole partners of L&M, although Dan was very active in L&M's business affairs. Attorney Andree Chicha did legal work for L&M and worked primarily with Dan. In 1993, at Dan's request, Chicha assisted Elizabeth in collecting on a loan that she had made to her daughter, Mary

---

[1] Because the parties have the same last name, we sometimes refer to them by their first names.

[2] For example, James bequeathed $256,000 to their daughter Mary Lynn and $1 to their son Dan.

Lynn. And in 1994, again at Dan's request, Chicha began assisting Elizabeth with her estate planning.

¶4 Also in 1994, Dan asked Chicha to revise L&M's partnership agreement so Elizabeth and Lillian could add Dan as a partner. Because Chicha was representing L&M, she referred Elizabeth to a different attorney. Chicha drafted the new partnership agreement to provide that Elizabeth would be paid $300,000, her total estimated capital contribution, if she chose to leave the partnership. Elizabeth's independent counsel thought the proposed arrangement was not in Elizabeth's best interest, so she requested that the agreement provide that Elizabeth would be paid the amount equal to her actual, rather than estimated, capital contributions if she left the partnership. Chicha incorporated those terms into the agreement which Elizabeth, Dan, and Lillian signed in August 1994.

¶5 After the 1994 agreement was executed, Elizabeth no longer wanted to pay her independent attorney's fees and instead wanted Chicha to represent her. Chicha, who considered herself to be L&M's attorney, recognized the potential conflict involved in representing both L&M and Elizabeth, but nevertheless agreed to represent both parties. She never obtained a conflict waiver from either client, nor did she ever insist that either client obtain independent counsel.

¶6 In July 1995, L&M obtained a $225,000 loan from Viking Bank. As collateral, Elizabeth, Dan, and Lillian pledged three condominium units, two of which Elizabeth owned outright. In 1997, Elizabeth withdrew as a partner of L&M, and Chicha drafted the documents to facilitate the buyout. The memorandum of sale stated that Elizabeth's total capital contribution to the partnership was $300,000 and that Dan and Lillian would purchase Elizabeth's interest for that amount. The accompanying promissory note provided that Dan and Lillian would make monthly interest payments to Elizabeth until the note was paid in full and that they would begin making principal payments on the first anniversary of Elizabeth's death. This arrangement

differed from the one established in the 1994 partnership agreement.[3] Also, as part of this transaction, Dan and Lillian promised to "indemnify, defend and hold Elizabeth C. Cawdrey harmless from any and all claims, demands, losses, costs, damages or liabilities which arise out of the business activities of L&M Partners."

¶7 In January 1999, Elizabeth signed a quitclaim deed conveying her two condominium units to L&M, and in exchange, Dan and Lillian agreed to release Elizabeth's liability on the Viking Bank loan. Again, Chicha drafted the documents memorializing the transaction. Shortly thereafter, Dan and Lillian refinanced the Viking Bank loan to remove Elizabeth's name. Chicha last provided legal assistance to Elizabeth in May 2000, when she prepared a codicil to her will.

¶8 In 2000, Elizabeth left Seattle, where she was living in the same condominium building as Dan and Lillian, and moved in with her daughter Mary Lynn in Arlington. Mary Lynn asked an attorney to investigate the state of Elizabeth's financial and legal affairs. The attorney attempted to obtain information about Elizabeth's assets, estate planning, and business transactions from Chicha, but Chicha refused to comply, asserting that the signature on Elizabeth's release form was forged. Mary Lynn then retained a trial attorney to commence litigation, and in late 2000, they received the requested information.

¶9 In December 2000, Elizabeth filed a lawsuit against Dan, Lillian, and L&M for fraud, misrepresentation, breach of fiduciary duty, breach of contract, conversion, undue influence, theft, and breach of implied duty of good faith and fair dealing. The claims arose out of various financial transactions, including the 1997 and 1999 transactions

---

[3] The 1994 partnership agreement provided that Dan and Lillian would pay the total amount in Elizabeth's capital account in five annual installments beginning at the buyout.

described above. Dan and Lillian eventually settled with Elizabeth for $700,000.[4]

¶10 In May 2003, Elizabeth brought this suit against Chicha and her law firm for legal malpractice, breach of contract, and breach of fiduciary duties, alleging that Chicha breached her duty of care as Elizabeth's attorney by facilitating business transactions that were detrimental to Elizabeth. Specifically, Elizabeth alleged that Chicha structured the partnership buyout so that Elizabeth would receive $300,000, even though Elizabeth had contributed $370,000 to her capital account. She also alleged that because L&M had indemnified her after the buyout, she was not required to quitclaim her condominium units to L&M in order to be released from its Viking Bank loan.

¶11 Elizabeth died two months after filing this case, and James Cawdrey, Jr., the personal representative of Elizabeth's estate and Elizabeth's eldest son, was substituted as plaintiff. Chicha filed a motion for summary judgment, and Cawdrey responded with a motion for partial summary judgment on liability and proximate cause. The trial court granted Chicha's summary judgment motion, dismissing all of Cawdrey's claims. The court also denied Cawdrey's motion for reconsideration. Cawdrey appeals the dismissal of the malpractice claim.

## DISCUSSION

¶12 In reviewing a trial court's decision to grant summary judgment, we review questions of law de novo.[5] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party,[6] and absent a genuine issue of material fact, the moving party is entitled

---

[4] In February 2001, when Elizabeth was 83 years old, a physician declared Elizabeth competent to handle her business and legal affairs. Two years later, in March 2003, the doctor opined that Elizabeth was no longer able to manage her own affairs.

[5] *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

[6] *Mason v. Kenyon Zero Storage*, 71 Wn. App. 5, 8-9, 856 P.2d 410 (1993).

to summary judgment as a matter of law.[7] Summary judgment is proper "only if reasonable persons could reach only one conclusion from all of the evidence."[8]

¶13 In this case, Chicha moved for summary judgment on two grounds. First, she argued that Cawdrey's cause of action is barred by the statute of limitations. Second, she argued that Cawdrey lacks competent evidence to support a prima facie legal malpractice case. While the trial court did not specify the grounds on which it granted the motion, we conclude that the case was filed after the limitations period expired.

■ ■ ¶14 In Washington, the statute of limitations period for a legal malpractice claim is three years,[9] and the period begins to accrue when the plaintiff has a right to seek legal relief.[10] Cawdrey's claim was filed on May 13, 2003, more than three years after the transactions at issue in her complaint. But Cawdrey argues that the period was tolled by either the discovery rule or the continuous representation rule. We disagree.

## I. *Discovery Rule*

■ ¶15 Under the discovery rule, the statute of limitations in a legal malpractice action begins to accrue when the client " 'discovers, or in the exercise of reasonable diligence should have discovered the facts which give rise to his or her cause of action.' "[11] For the discovery rule to apply, the plaintiff need not know of the legal cause of

---

[7] *Condor Enters., Inc. v. Boise Cascade Corp.*, 71 Wn. App. 48, 54, 856 P.2d 713 (1993) (citing CR 56(c); *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990)).

[8] *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992) (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)).

[9] *Huff v. Roach*, 125 Wn. App. 724, 729, 106 P.3d 268 (2005) (citing RCW 4.16.080(3); *Matson v. Weidenkopf*, 101 Wn. App. 472, 481, 3 P.3d 805 (2000)).

[10] *Id.* (citing *Janicki Logging & Constr. Co. v. Schwabe, Williamson & Wyatt, P.C.*, 109 Wn. App. 655, 659, 37 P.3d 309 (2001), *review denied*, 146 Wn.2d 1019 (2002)).

[11] *Janicki Logging*, 109 Wn. App. at 659 (quoting *Peters v. Simmons*, 87 Wn.2d 400, 406, 552 P.2d 1053 (1976)).

action itself. Rather, she must know the facts that give rise to that cause of action.[12] In addition, she must know the facts supporting each essential element of the cause of action before the limitations period begins to accrue.[13] Cawdrey argues that "Elizabeth did not have a real understanding of the conflicted representation until, at the earliest, she consulted independent counsel and her counsel received sufficient information to understand the conflict." According to Cawdrey, Elizabeth's independent counsel did not receive that information until the fall of 2000.

¶16 But in order for the limitations period to begin, a plaintiff need only be aware of the facts underlying the claim. Cawdrey's malpractice case is based on facts about which Elizabeth knew, or could with reasonable diligence have known, at the time the transactions took place. First, Cawdrey alleges that Chicha represented Elizabeth in business transactions with L&M at the same time that she represented L&M in the same transactions. Specifically, Cawdrey alleges that Chicha advised Elizabeth during the sale of her L&M partnership interest to Dan and Lillian and during the conveyance of her condominiums, while at the same time advising Dan and Lillian about these transactions. Because Chicha never concealed the fact that she was representing both parties in the transactions, Elizabeth knew about Chicha's dual representation as it was happening, so the discovery rule does not apply here.

¶17 Second, Cawdrey alleges that while representing both parties in the business transactions, Chicha failed to investigate the value of Elizabeth's interests. Specifically, Chicha failed to research and account for the total value of Elizabeth's L&M capital account and failed to consider or recognize that because Lillian and Dan had indemnified Elizabeth on the Viking Bank loan, there was no reason for

---

[12] *Id.* (citing *Richardson v. Denend*, 59 Wn. App. 92, 95-96, 795 P.2d 1192 (1990), *review denied*, 116 Wn.2d 1005 (1991); *Gevaart v. Metco Constr., Inc.*, 111 Wn.2d 499, 502, 760 P.2d 348 (1988)).

[13] *Id.* at 659-60 (citing *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979); *Lo v. Honda Motor Co.*, 73 Wn. App. 448, 869 P.2d 1114 (1994)).

Elizabeth to quitclaim her condominiums to L&M in order to be released from that loan. If Elizabeth did not know the value of her capital account or that she had been indemnified from the Viking Bank loan, she could have discovered these facts with reasonable diligence. Again, the discovery rule cannot apply.

¶18 It is true that when a plaintiff discovered a cause of action, or whether a plaintiff exercised reasonable diligence to discover the action, is generally a question of fact. But if reasonable minds could not differ, it is a question of law.[14] Here, reasonable minds could not differ about when Elizabeth learned of the facts about which Cawdrey now complains. Elizabeth knew of Chicha's dual representation during the business transactions at issue. And most significantly, in 2000 Elizabeth knew enough facts to file suit against Dan and Lillian. That suit involved, in part, the same transactions at issue here. Although Elizabeth was elderly, she was deemed competent in a 2001 medical examination and thus had the mental faculties to know the facts relevant to this case and to exercise reasonable diligence in obtaining whatever information she did not have.

¶19 Cawdrey argues that Elizabeth could not have known that she had been harmed by Chicha until independent counsel got information in late 2000. But the discovery rule does not allow the plaintiff to wait until she knows the specific cause of action. Rather, it requires her to file suit within three years of the time when she knows the facts underlying the cause of action. Because Elizabeth knew, or should have known, of the facts underlying her cause of action at the time the events were occurring, the statute of limitations began to accrue when the events took place. Therefore, the three year limitations period began to run in 1997 and 1999, when the transactions at issue here were completed.

---

[14] *Goodman v. Goodman*, 128 Wn.2d 366, 373, 907 P.2d 290 (1995) (citing *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 263, 840 P.2d 860 (1992); *Richardson*, 59 Wn. App. at 95).

## II. *Continuous Representation Rule*

¶20 Cawdrey also argues that the continuous representation rule tolled the limitations period. That rule tolls "the statute of limitations until the end of an attorney's representation of a client in the same matter in which the alleged malpractice occurred."[15] In this case, Cawdrey argues that Chicha represented Elizabeth continuously from 1993 until May 16, 2000, so the limitations period did not begin to accrue until May 16, 2000. Thus, her complaint, filed May 13, 2003, was timely. But under the continuous representation rule, the limitations period begins to accrue when the attorney stops representing the client on the *particular matter in which the alleged malpractice occurred.* Although Chicha last represented Elizabeth in May 2000, when she prepared a codicil to Elizabeth's will, her representation in the transactions at issue here ended in 1999.

¶21 Cawdrey urges us to expand the continuing representation rule's scope and apply it to an attorney's representation as a whole, rather than to her representation on a specific matter. But this expansion would conflict with our rationale for adopting the rule in the first place. The purpose of the rule is to give attorneys an opportunity to remedy their errors, establish that there was no error, or attempt to mitigate the damage caused by their errors, while still allowing the aggrieved client the right to later bring a malpractice action.[16] That way, " '[t]he client is not forced to end the relationship, though the option exists.' "[17] When we adopted the rule, we made it clear that "the rule does not toll the statute of limitations until the end of the attorney-client *relationship*, but only during the lawyer's representation of the client in the *same matter* from which

---

[15] *Janicki Logging*, 109 Wn. App. at 661.

[16] *Id.* at 663 (citing 3 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 22.13, at 431 (5th ed. 2000)).

[17] *Id.* (quoting MALLEN & SMITH, *supra*, § 22.13, at 431).

the malpractice claim arose."[18] Here, Chicha could not have remedied her error or mitigated the damage it caused several years after the fact, so we must decline to broaden the definition of "continuing representation" to include Chicha's overall representation of Elizabeth in her personal and business matters. Because there is no relationship between the business transactions at issue here and the May 2000 will codicil, the continuing representation rule does not toll the limitations period in this case.

¶22 We are troubled that Chicha represented conflicting interests for so many years without obtaining a waiver or insisting on independent counsel. But unfortunately neither the discovery rule nor the continuous representation rule tolled the statute of limitations period, and the case is time-barred. We affirm.

Cox, C.J., and Becker, J., concur.

Review denied at 157 Wn.2d 1004 (2006).