IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DAVID MONK, an individual; and )
WHITE RIVER FEED COMPANY, INC., )    No. 70126-6-I
a Washington corporation, )
 )    DIVISION ONE
 )
        Appellants/ )
        Cross-Respondents,)
 )
    v. )
 )
RICHARD PIERSON and JOAN )
ASKEY, individually and as the marital )
community comprised thereof; )
and WILLIAMS & WILLIAMS, P.S.C., a )    UNPUBLISHED OPINION
Washington professional service )
corporation, )    FILED: March 24, 2014
 )
        Respondents/ )
        Cross-Appellants. )
 )
        and )
 )
KINGMAN PEABOY PIERSON & )
FITZHARRIS, P.S., a Washington )
corporation, n/k/a KINGMAN RINGER )
& HORNE, INC., P.S. )
 )
        Defendants. )
_____)

BECKER, J. — In this legal malpractice case that was dismissed on

summary judgment, David Monk sued Richard Pierson, the attorney who

represented him in an inverse condemnation case. Monk claims Pierson caused

him to incur an exorbitant bill and misadvised him that he would recover all of his

attorney fees and costs. The primary issue now is whether Monk's claims are time barred. They are. We affirm.

On August 1, 2011, Monk sued Pierson for legal malpractice, violations of the Washington Consumer Protection Act, chapter 19.86 RCW, and breach of fiduciary duty. On March 1, 2013, the trial court granted Pierson's motion for summary judgment dismissal on the ground that the statutes of limitations on Monk's claims had expired. Monk appeals.

We review an order of summary judgment de novo, engaging in the same inquiry as the trial court. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is proper if, viewing the facts and reasonable inferences most favorably to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319-20, 111 P.3d 866 (2005), review denied, 156 Wn.2d 1008 (2006).

In Washington, the statute of limitations for a legal malpractice claim is three years. The period begins to accrue when the plaintiff has a right to seek relief. Cawdrey v. Hanson Baker Ludlow Drumheller, PS, 129 Wn. App. 810, 816, 120 P.3d 605 (2005), review denied, 157 Wn.2d 1004 (2006). A consumer protection action carries a four-year statute of limitations. RCW 19.86.120. Monk filed suit more than four years after the events at issue in his complaint. He claims the statutes of limitations were tolled by either the discovery rule or the continuous representation rule.

Monk owns and operates the White River Feed Company, located in King County between Auburn and Kent. White River processes bulk grain into animal feed to deliver to local farms.

In 2001, the cities of Auburn and Kent decided to build a railroad overpass near the southern tip of Monk's property. Monk protested that the support structures for the overpass were encroaching on his property.

On February 27, 2002, Monk retained Pierson, an attorney then with Kingman Peabody Pierson & Fitzharris PS in Seattle, to represent him against the cities. The retainer agreement Monk signed required him to pay all costs and expenses associated with Pierson's representation, including expert witness fees, within 15 days of invoice. If Monk did not do so, he would be charged one percent interest per month on any unpaid balance. Payment of Pierson's fees was not contingent on the outcome of his representation.

In June 2002, Pierson filed suit on Monk's behalf against the cities for inverse condemnation. Monk alleged not only the taking of land at the southern end of Monk's property but also substantial impairment of access on the west side. The cities obtained an order of partial summary judgment dismissing Monk's claim for impairment of access. Monk obtained partial summary judgment declaring the cities had taken at least 6.2 square feet of his property. The only issue that went to trial was Monk's claim that the piece of property taken was actually much more sizable.

Trial was bifurcated, and the first phase—the extent of the taking—was tried to the bench in December 2003. The trial court agreed with Monk that the taking was larger. The court established the property line based on Monk's evidence. In January 2004, the cities offered Monk $150,000 in settlement as just compensation for the taking. Monk did not accept.

In mid-March 2004, a jury in the second phase—damages for the taking—awarded Monk $39,918 for the permanent taking of about 2,334 square feet of his property, and $7,470 for a temporary construction easement, for a total of $47,388 in damages. The court entered judgment on the verdict in April 2004, including prejudgment interest and costs, for a total of $64,259.79.

As of March 2004, Pierson had billed Monk $212,663.00 for his representation under the retainer agreement. Monk had paid Pierson $67,634.80 for fees and costs. Monk's last payment to Pierson was made on February 20, 2004.

In a case of inverse condemnation, the property owner can recover reasonable attorney fees and reasonable expert witness fees, "but only if the judgment awarded to the plaintiff as a result of trial exceeds by ten percent or more the highest written offer of settlement submitted by the acquiring agency . . . at least thirty days prior to trial." RCW 8.25.075(3). In April 2004, Monk moved for an award of attorney fees in the amount of $212,684.50 and for expenses in the amount of $25,293.10.

4

The trial court denied Monk's request for an award of attorney fees and costs because the jury's verdict did not exceed the cities' settlement offer of $150,000. The trial court adopted the cities' interpretation of "trial" under the fee shifting statute as referring only to the proceeding in which the court renders a judgment awarding compensation. By this interpretation, the cities' settlement offer was "prior to trial" even though it was not submitted before the bench trial that established the taking.

Pierson referred Monk to attorney John M. Groen of Groen Stephens & Klinge LLC. On Monk's behalf, Groen filed an appeal. One issue was whether the trial court had properly denied Monk's request for an award of fees. On that issue, the appeal was successful. Monk v. City of Auburn, noted at 128 Wn. App. 1066, 2005 WL 1870790 (2005), review denied, 157 Wn.2d 1023 (2006). This court found that the first part of Monk's bifurcated trial began in December 2003 with the bench trial establishing the property line. Since the cities had made no offer of settlement before that date, they were "liable for the reasonable attorney fees and reasonable expert witness fees incurred by Monk in connection with the claim he tried." Monk v. City of Auburn, 2005 WL 1870790, at *4. We remanded to the trial court to award Monk his reasonable attorney fees, both at trial and on appeal, for the portion of the appeal related to RCW 8.25.075(3).

Also of significance to Monk's malpractice action against Pierson, our decision affirmed the trial court's pretrial dismissal of Monk's claim of impairment of access. The rest of our decision affirmed Pierson's separate appeal of CR 11

sanctions, which had been consolidated with Monk's case. Monk v. City of Auburn, 2005 WL 1870790, at *11.

Our opinion was issued on August 8, 2005. The cities appealed.

On July 27, 2006, Monk sent Pierson a letter that he was unhappy with his services and believed Pierson had overcharged him:

> I believe that when you hire legal representation it is the attorney's responsibility to know the laws that pertain to your case. I feel that considering the amount I was going to be able to collect in proving the property was mine vs. the fees I was charged is grossly out of balance. I would like to resolve this issue in a fair manner to both parties. Please contact me with any questions or concerns.

Also in 2006, the Supreme Court denied review, and this court's opinion became final.

On July 10, 2007, Monk, represented by Groen, moved on remand for an award of attorney fees and costs per our opinion. According to the motion, Monk had incurred $697,179.75 in fees and costs during the litigation. It bears repeating that Monk had won at trial only $47,388.00, for a judgment totaling $64,259.79 once prejudgment interest and statutory costs were added. The total fees and costs Monk incurred were more than 10 times that amount.

The motion sought from the cities the reduced amount of $504,849.76 of which $156,104.37 was for Pierson's attorney fees; the rest included the fees of Pierson's associated counsel and various experts, as well as Groen's fees on appeal. Groen declared that he had carefully scrutinized billing records to ensure that the request included only time and costs incurred in connection with the

6

inverse condemnation claim, and that it excluded time and costs incurred in connection with Monk's unsuccessful claims.

On September 22, 2008, the trial court issued a 109-page memorandum opinion awarding attorney fees and costs. In evaluating the reasonableness of fees and costs incurred by Monk, the court took into consideration the failure of Monk and Pierson to engage in realistic settlement negotiations:

> Although this court cannot stand in David Monk's shoes or read his mind, the court surmises that this litigation has been a nightmare for David Monk. On the one hand, he has been proven correct: without first paying just compensation, the Cities encroached on the border of Monk's property constructing the South 277th Street railroad overpass near the intersection of 78th Avenue South in Auburn, Washington. On the other hand, the jury awarded him just $47,388 and now, nearly eight years after the overpass was built, his attorneys have handed him a bill for $488,539.09 in fees and costs which they expect the Cities to pay pursuant to RCW 8.25.075(3). Moreover, his attorneys say that Monk is responsible for an additional $243,852.40 in fees and costs for which they are not seeking payment from the Cities because they are billings related to unsuccessful claims or claims for which fees cannot be recovered. . . . In evaluating the reasonableness of the fees and costs incurred in this matter, the court reasonably may look to whether Monk made any realistic effort to settle this case as contemplated by RCW 8.25.075(3). He did not.
>
> Monk either had a completely unrealistic view of the value of his case,[13] or he received bad legal advice about what reasonably might be achieved through litigation, or both. . . .
>
> What was Monk to make of all of this? Presumably he had no idea that his attorney was engaging in meritless litigation. The effect of his attorney's effort, however, was to doom from the outset any settlement on the merits of his inverse condemnation claim. It is the court's judgment that Monk was incurring attorney, expert witness fees and costs so substantial that, from his point of view, settlement was all but impossible.

---

[13]At trial, Monk told the jury he estimated just compensation to be one million dollars, yet his appraiser told the jury that Monk was entitled to $61,148.

Applying a lodestar analysis, the court awarded Monk $253,519.40 in attorney fees and costs, approximately one-half of what his motion requested. The cities paid the award into the court registry.

In October 2008, Pierson filed an attorney's lien.

In December 2008, the court granted Monk's motion to disburse all but $65,880 to Monk and his attorneys other than Pierson.

In January 2009, Pierson moved to enforce his lien against the $65,880 that remained in the court's registry. Monk hired attorney Kristina Driessen to defend him against Pierson's lien.

In August 2009, the trial court concluded that Pierson had a valid lien in the amount of $33,883.85 for work done up to April 1, 2004, with one percent interest per month on the unpaid balance under the retainer agreement, for a total of $55,568.96. The court enforced Pierson's lien in that amount.

In 2011, Monk sued Driessen for legal malpractice, arguing that Driessen's failure to assert malpractice and consumer protection claims against Pierson in the lien proceedings caused Monk to lose the opportunity to pursue those claims. The trial court disagreed and granted attorney Driessen's motion for summary judgment. This court affirmed in an unpublished opinion. Monk v. Driessen, noted at 171 Wn. App. 1009, 2012 WL 4857208, at *3.

Monk filed the present malpractice action against Pierson in August 2011. Monk alleged that Pierson unreasonably thwarted settlement negotiations with the cities, causing him to lose out on the cities' settlement offer of $150,000. He

alleged that Pierson charged extraordinary attorney fees to pursue protracted, vexatious, and unnecessary litigation against the cities, all the while giving assurances that Monk would be able to recover from the cities his attorney fees and expenses for expert witnesses.

The trial court granted Pierson's motion for summary judgment, ruling that Monk's claims were time barred and neither the discovery rule nor the rule of continuous representation tolled the statute of limitations. This ruling is now before us on Monk's appeal.

"It is true that when a plaintiff discovered a cause of action, or whether a plaintiff exercised reasonable diligence to discover the action, is generally a question of fact. But if reasonable minds could not differ, it is a question of law." Cawdrey, 129 Wn. App. at 818.

Under the discovery rule, the three-year statute of limitations for legal malpractice begins to run as soon as the client discovers, or in the exercise of reasonable diligence should have discovered, the facts which give rise to his cause of action. Cawdrey, 129 Wn. App. at 816, quoting Janicki Logging & Constr. Co. v. Schwabe, Williamson & Wyatt, PC, 109 Wn. App. 655, 659, 37 P.3d 309 (2001), review denied, 146 Wn.2d 1019 (2002). The discovery rule also applies to the four-year statute of limitations under the Consumer Protection Act. Mayer v. Sto Indus., Inc., 123 Wn. App. 443, 463, 98 P.3d 116 (2004), affirmed in part, reversed in part on other grounds, 156 Wn.2d 677, 132 P.3d 115 (2006).

9

In order for the limitations period to begin, a plaintiff need only be aware of the facts underlying his claim and supporting each essential element of the cause of action. Cawdrey, 129 Wn. App. at 817. Because Monk filed this lawsuit against Pierson in August 2011, he had to show that he was unaware of the facts supporting his claims until at least August 2008 (for malpractice) or August 2007 (for the consumer protection action). Each of these claims requires proof that the attorney's act caused injury. Janicki Logging, 109 Wn. App. at 659-60; Murphey v. Grass, 164 Wn. App. 584, 594, 267 P.3d 376 (2011) (malpractice), review denied, 173 Wn.2d 1022 (2012); Mayer, 123 Wn. App. at 458 (consumer protection). Monk contends he did not discover he was injured by Pierson's actions until September 2008, when the trial court determined the amount of attorney fees and costs the cities were required to pay was less than half of the fees and costs Monk incurred in the litigation. Until then, Monk argues, he could not have known whether the trial court "was going to award all fees and costs, some fees and costs or no fees and costs."

The trial court found that Monk possessed "the knowledge of the damage" caused by Pierson's actions well before August 2007:

> In looking at the knowledge of the damage, I concur that we don't have to wait for Judge White's opinion [September 2008] with regard to the full extent of what the value of the damages were for the starting point. It could even be said that it was much earlier than the Court of Appeals' opinion [August 2005], but certainly that ruling was definitive with regard to the fact that there was damage, and that happened on August 8th of 2005.

The trial court's reasoning is sound. Monk's letter to Pierson on July 27, 2006, shows that he was aware Pierson had misinformed him that he would be able to recover all attorney fees and costs. He also knew Pierson had been running up fees "grossly out of balance" with what Monk "was going to be able to collect." The discovery rule does not require that all of a plaintiff's damages be fixed before the cause of action accrues. Streifel v. Hansch, 40 Wn. App. 233, 236, 698 P.2d 570 (1985). By the time this court's opinion in the first appeal was issued in August 2005, Monk knew for certain that he had lost his impairment of access claim and would recover fees only on his inverse condemnation claim, and that the fees he would recover would be limited to reasonable fees. By filing this suit in August 2011, Monk missed the statute of limitations for a malpractice claim by at least three years and for a consumer protection claim by at least two years.

Monk also contends that the continuous representation rule tolled the limitations period. This argument fails. The continuous representation rule tolls the statute of limitations until the end of an attorney's representation of a client "in the same matter in which the alleged malpractice occurred." Janicki Logging, 109 Wn. App. at 661. It avoids disruption of the attorney-client relationship and gives attorneys the chance to remedy mistakes before being sued. Janicki, 109 Wn. App. at 662.

Monk argues that Pierson never advised him he was terminating the attorney-client relationship or formally withdrew, so he still considered Pierson to

be his attorney. Monk contends that the first indication he had that Pierson ceased representing him came in October 2008 when Pierson filed his attorney lien. The trial court found these arguments unconvincing:

> With regard to the continuous representation rule, . . . even in looking at all of the evidence most favorably to the nonmoving party, the only thing that I have that contradicts the notion that this relationship no longer existed is the statement by the plaintiff that he believed that he was still being represented by the defendant.
> . . . The idea that there wasn't a withdrawal, yeah, that would have made things a lot easier if there had been one, and certainly, you know, we have rules which speak to that, but that isn't the definitive piece of evidence here either.
> When I look at the evidence that was presented with regard to the relationship between the plaintiff and the defendant, there is no objective evidence that a reasonable person would have the belief that the defendant was still representing the plaintiff.

Again, we agree with the trial court's analysis. The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists, but the client's subjective belief does not control the issue unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions. Bohn v. Cody, 119 Wn.2d 357, 363, 832 P.2d 71 (1992). Monk did not present a genuine issue of material fact regarding Pierson's continuous representation. Monk had no reasonable belief based on the attending circumstances—as opposed to wishful thinking—that Pierson was going to remedy his overbilling, for example, by writing off the balance due. And even if Monk could prove a continuous relationship with Pierson, it would not suffice because the rule requires proof that Pierson was continuing *to represent him in the inverse condemnation matter.* See Janicki, 109 Wn. App. at 661 n.1.

12

After Pierson referred the appeal to Groen, there is no evidence that Pierson worked on the appeal or on the motion for attorney fees and costs on remand. All Pierson appears to have done after April 2004 is to hand over his billing documentation, which Groen then had the thankless task of attempting to justify.

Because Monk's claims were untimely, we do not reach Pierson's argument on cross appeal that collateral estoppel barred the claims.

Affirmed.

Becker, J.

WE CONCUR: