# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

VELOCITY CAPITAL PARTNERS,
LLC, an Oregon limited liability
company,

          Appellant,

        v.

LASHER, HOLZAPFEL, SPERRY &
EBBERSON, PLLC, a Washington
limited liability company, and EUGENE
WONG, an individual,

          Respondents.

No. 71902-5-I

UNPUBLISHED OPINION

FILED: August 3, 2015

VERELLEN, J. — After discovering that commercial borrowers had not signed the promissory note and the deed of trust evidencing a loan from Velocity Capital Partners, Velocity sued its attorney for legal malpractice and breach of fiduciary duty. The trial court dismissed Velocity's claims as barred by the applicable three-year limitations period. Velocity contends it did not suffer "damage" until one of the borrowers repudiated his loan obligation in December 2009 or until Velocity settled with another borrower in late 2012. But under the discovery rule, by January 2009, Velocity "in the exercise of reasonable diligence" should have known that its legal interests had been invaded for lack of an executed promissory note and a recorded deed of trust. The three-year limitations period expired before Velocity commenced this suit in December 2012. We affirm.

## FACTS

Velocity, formed by Jeff Sakamoto in 2007, makes commercial loans. Eugene Wong, an attorney at Lasher, Holzapfel, Sperry & Ebberson, represented Velocity for several loans, including the March 2008 and July 2008 loans to K&S Development. Gerald Kingen and Scott Switzer managed K&S. Tom Hazelrigg managed TRH Lenders, the disbursement and escrow agent for the March 2008 and July 2008 loans to K&S.

For the March 2008 loan, Velocity requested Wong to "prepare the loan documents."[1] Wong drafted and sent the loan documents to Switzer and Sakamoto. Kingen and Switzer executed the loan documents, and Wong notarized their signatures on the deed of trust and loan guarantee. In early April 2008, Wong informed the parties, including Sakamoto, that the deed of trust had been "recorded."[2]

For the July 2008 loan, Wong drafted and sent the loan documents to Switzer and Sakamoto in late July 2008. Wong told the parties to "return the fully executed documents to me for final processing."[3] Then Hazelrigg informed Wong that Velocity and K&S waived title insurance for the July 2008 loan. The next day, Wong e-mailed new draft loan documents to Hazelrigg, Switzer, and Sakamoto. Wong again told them to "return the original executed documents to me for processing and recording."[4]

In mid-August 2008, Switzer emailed Hazelrigg, asking when the loan to K&S would be finalized. Hazelrigg responded to Switzer with a copy to Sakamoto, asking

---

[1] Clerk's Papers (CP) at 1036.

[2] Id. at 163.

[3] Id. at 186.

[4] Id. at 188.

2

whether the "final papers" had been sent to Sakamoto.[5] Sakamoto called Hazelrigg to discuss the status of closing and the final papers, but he does not recall the substance of that conversation.[6]

Velocity funded, and TRH disbursed, the July 2008 loan proceeds absent any executed loan documents or a recorded deed of trust. K&S defaulted on both loans. On January 5, 2009, Velocity and K&S then entered into a loan maturity extension agreement for both the March 2008 and July 2008 loans. Sakamoto drafted the agreement without ever contacting Wong. The agreement purported to attach the March 2008 and July 2008 loan documents, but those documents were not attached because Sakamoto did not locate them.

In mid-December 2009, Sakamoto finally contacted Wong to request copies of the executed loan documents. Wong confirmed that he had never received executed documents for the July 2008 loan. Velocity sued Wong and the Lasher firm for legal malpractice and breach of fiduciary duty on December 12, 2012. On summary judgment, the trial court dismissed Velocity's claims as barred by the statute of limitations.

Velocity appeals.

### ANALYSIS

Velocity contends the trial court erred in concluding that its claims were time barred. We disagree.

---

[5] Id. at 239.

[6] The parties dispute whether Wong called Sakamoto and left him a voicemail in mid-August 2008. Wong contends his voicemail informed Sakamoto that he had still not received executed loan documents from K&S and that Sakamoto never returned Wong's call. Sakamoto contends he never received such a voicemail from Wong.

The limitations period for a legal malpractice claim is three years.[7] The discovery rule applies in legal malpractice actions.[8] Under the discovery rule, the limitations period begins to run when the client knows, or "'in the exercise of reasonable diligence'" should have known, the facts supporting each essential element of his or her claim.[9]

A legal malpractice claim requires an "injury."[10] The "injury" element differs from proof of "damages."[11] "Damages" are the injury's monetary value, but "injury" is the invasion of one's legal interest.[12] "Injury" and "damages" need not occur simultaneously.[13] And the "law does not require a smoking gun" in order for the limitations period to begin.[14] A plaintiff "who reasonably suspects that a specific wrongful act has occurred is on notice that legal action must be taken."[15] When an attorney compromises a client's legal position or interest, the "injury" element is satisfied, even if the amount of damages remains to be determined.[16]

To survive summary judgment, Velocity must demonstrate that reasonable minds could differ whether it knew, or in the exercise of reasonable diligence should have

---

[7] RCW 4.16.080(3); Cawdrey v. Hanson Baker Ludlow Drumheller, P.S., 129 Wn. App. 810, 816, 120 P.3d 605 (2005).

[8] Huff v. Roach, 125 Wn. App. 724, 729, 106 P.3d 268 (2005); Schreiner Farms, Inc. v. Am. Tower, Inc., 173 Wn. App. 154, 160, 293 P.3d 407 (2013).

[9] Cawdrey, 129 Wn. App. at 816 (quoting Janicki Logging & Constr. Co. v. Schwabe, Williamson & Wyatt, P.C., 109 Wn. App. 655, 659, 37 P.3d 309 (2001)).

[10] Huff, 125 Wn. App. at 729.

[11] Id.

[12] Id. at 729-30.

[13] Id. at 730.

[14] Giraud v. Quincy Farm & Chem., 102 Wn. App. 443, 450, 6 P.3d 104 (2000).

[15] Id. at 451.

[16] See Huff, 125 Wn. App. at 730-32.

known, before December 12, 2009, the facts supporting each essential element of its claim. The critical issue here is when Velocity experienced "injury." The trial court determined Velocity's claims were time barred:

> [N]o later than January of 2009 [Velocity was] clearly put on notice that a reasonable person would know or should have known by the exercise of due diligence that they had a potential claim for malpractice given the nonexistence of the loan documents.[17]

We agree with the trial court. As early as August 11, 2008, there was uncertainty between the borrower (K&S), the disbursement and escrow agent (TRH), and the lender (Velocity) over the status of the July 2008 loan documents. Unlike prior loans, Wong had not sent an e-mail to Velocity confirming that the July 2008 loan documents had been executed or the deed of trust recorded.

On January 5, 2009, K&S signed a loan maturity extension agreement for both its loans. Sakamoto drafted the agreement, which purported to attach the March 2008 and July 2008 loan documents. But Sakamoto did not attach any loan documents to the agreement. Nor did he contact Wong in January 2009 to confirm whether the July 2008 loan documents had been executed or the deed of trust recorded. Under any version of the "business model" used by Velocity, Hazelrigg, and Wong, Wong would end up with the final documents and would regularly inform the parties when the documents had been executed or the deed of trust recorded. Therefore, at least by January 2009, a reasonable person under similar circumstances would have inquired into the status of the loan documents rather than waiting until 11 months later.

---

[17] Report of Proceedings (Apr. 11, 2014) at 78.

Huff v. Roach is instructive.[18] The Huffs were injured in a motor vehicle accident, but their first attorney filed suit after the two-year Oregon limitations period had expired. The Huffs hired a second attorney. Because the limitations period had expired, the Huffs voluntarily dismissed their personal injury lawsuit in 2000. The Huffs then waited until 2002 to sue their first attorney for legal malpractice.

The Huffs argued they were not "damaged" or "injured" until they voluntarily dismissed their personal injury lawsuit in 2000. The court rejected the Huffs' argument that the statute of limitations should have been tolled until they voluntarily dismissed their claim in 2000. The court held that the Huffs were "injured" when their first attorney "missed the statute of limitations [in 1995], effectively invading their legal interests."[19] Although the extent of the Huffs' damages were unknown in 1995, the Huffs knew the facts supporting their claim by 1995.[20]

Here, when Sakamoto drafted the extension agreement and purported to attach the July 2008 loan documents, he knew or should have known that Velocity's legal interests had been invaded. Velocity had no executed loan documents nor a recorded deed of trust. Uncertainty of the full extent of its "damages" does not toll the statute of limitations. If we adopted Velocity's theory that a lender is not injured by legal malpractice until the dispute with the borrower is resolved, the limitations period "could

---

[18] 125 Wn. App. 724, 106 P.3d 268 (2005).

[19] Id. at 730.

[20] Id. at 730-32.

be indefinitely extended."[21]  This approach contradicts "Washington's policy favoring the statute of limitations shielding defendants from stale claims."[22]

Therefore, the three-year limitations period began running no later than January 5, 2009, and expired months before Velocity initiated this lawsuit in December 2012.

## CONCLUSION

The trial court properly dismissed Velocity's claims as barred by the three-year statute of limitations.  Because we agree that the limitations period had run, we need not address Velocity's arguments that questions of fact exist as to duty, breach, and proximate cause.

We affirm.

WE CONCUR:

_Trickey, J_

_Spearman, C.J._

---

[21] Id. at 732.

[22] Id. at 731-32.