# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GEORGE R. "RUSTY" GILL, JR., an individual, | No. 58057-8-II |
| Appellant, | |
| v. | |
| HILLIER, SCHEIBMEIR, KELLY & SATTERFIELD, P.S., a Washington Professional Services Corporation, formerly known as HILLIER, SCHEIBMEIR, VEY & KELLY, P.S., a Washington Professional Services Corporation, and; MARK C. SCHEIBMEIR, Individually and on behalf of the marital community comprised of MARK C. SCHEIBMEIR and JANE DOE SCHEIBMEIR, | UNPUBLISHED OPINION |
| Respondents. | |

GLASGOW, C.J. — In 2014, George Gill sold his construction company to Fred Hicks, his former employee. Mark Scheibmeir, Gill's attorney, advised Gill on the sale's structure and drafted the sale documents. Gill sold the company's stock to Hicks and Hicks agreed to make monthly payments toward the purchase price with interest. Hicks also agreed that any default would allow Gill to foreclose on the stock. Gill did not retain an interest in the company's tangible assets.

After Hicks failed to make timely payments for several years and the federal government filed tax liens in 2016 and 2017, Gill sought to repossess the company's equipment in 2019. Gill

learned from Scheibmeir that his only option for getting any equipment was foreclosing on the stock, which would result in repossessing the entire company, including its liabilities.

In 2022, Gill sued Scheibmeir and his law firm (collectively, the law firm) for legal malpractice, citing failure to structure the transaction so that he would have a secured interest in the company's real estate, equipment, or future receivables. The law firm asserted that Gill's claim fell outside the three-year statute of limitations period. Gill then filed for partial summary judgment, asking the trial court to conclude that he commenced the lawsuit within the statute of limitations period and that the law firm breached its duty of care to him.

The trial court denied Gill's motion, concluding that Gill's claim was barred by the statute of limitations and that genuine issues of material fact remained regarding whether the law firm breached its duty of care. The parties stipulated that Gill reserved the right to appeal but the case would otherwise be dismissed.

On appeal, Gill argues that his claim was timely because either the discovery rule or the continuous representation rule tolled the statute of limitations period. He further argues that there was no genuine issue of material fact regarding the law firm's breach of its duty of care. We affirm.

FACTS

I. BACKGROUND

Gill started RG Construction, a heavy civil construction company, in 2000. Hillier, Scheibmeir, Kelly & Satterfield,[1] a law firm, provided Gill with a variety of legal services concerning the company.

---

[1] Although the firm has had other names, we use its current name to prevent confusion.

Several years after starting RG Construction, Gill hired Hicks as a project superintendent. In 2013, Gill agreed to sell RG Construction to Hicks.

A year later, Scheibmeir helped Gill effectuate the sale. Gill told Scheibmeir about the general terms he had discussed with Hicks, and Scheibmeir gave legal advice and drafted the sale documents.

The sale was structured as a stock purchase, so Gill sold all shares of stock in RG Construction to Hicks for $2,273,000. The sale also included "any cash on hand as well as all other assets and liabilities for the corporation[,] except those assets and liabilities" Gill expressly retained. Clerk's Papers (CP) at 65.

Gill and Hicks signed the sale agreement on January 24, 2014. Hicks agreed to pay Gill $20,000 per month starting on February 1, 2015. The deadline for paying the entire purchase price and accrued interest was December 31, 2019. Hicks agreed that if he failed to comply with the sale agreement's terms, he would be entitled to written notice of his default and 30 days to cure the default. But if he did not cure the default within that time frame, Gill would be able to terminate all of Hicks' rights under the sale agreement. All payments Hicks had made would be forfeited to Gill, and Gill would have the right to repossess all of RG Construction's shares "and resume management, ownership, and control of said shares." CP at 70. But the sale agreement did not give Gill a secured interest in any of RG Construction's equipment or personal property. Nor did the agreement give Gill a secured interest in any real estate or future receivables.

## II. BUYER'S DEFAULT

In 2015, Hicks failed to make his first monthly payment to Gill, which constituted a default of the sale agreement. Gill verbally agreed to give Hicks more time "to get his feet under him again

3

. . . and start making his payments." CP at 235. Hicks made his first monthly payment in 2017, agreeing to make slightly larger monthly payments to make up for the missed payments. Between 2015 and 2017, Hicks made good-faith efforts to be able to make payments, and he regularly communicated with Gill about RG Construction. Gill did not send Hicks a written notice to cure default during this time. And Gill did not tell Scheibmeir about Hicks' failures to make payments.

Meanwhile, in 2016 and 2017, the Internal Revenue Service filed several tax liens against RG Construction and Hicks. While our record does not include notices of earlier tax liens, in a deposition, Gill guessed that he first became aware of a tax lien in 2015.

Hicks made his last payment to Gill in June 2019, and he failed to make payments due after that. In October 2019, Gill told Scheibmeir that Hicks had stopped making payments. Gill said he wanted to repossess RG Construction's equipment. Scheibmeir said Gill would not be able to immediately repossess the equipment, explaining that if Gill wanted to get anything back from the company, he would need to foreclose on the stock, which meant assuming ownership of the company and all its liabilities. Gill said he was not interested in that option.

After making several attempts to resolve Hicks' nonpayment, Gill sued Hicks for breach of contract in April 2021. Gill was represented by Scheibmeir. The law firm claims that RG Construction filed for bankruptcy on April 28, 2022, and Gill does not dispute this claim. A day after the bankruptcy filing, Gill obtained a judgment of nearly $2,300,000 against Hicks and his spouse. In January 2023, RG Construction's heavy equipment and tools were sold for almost $570,000 as part of the bankruptcy case. In addition, the company had accounts receivable in an amount of about $786,000. The IRS liens amounted to about $1.2 million.

4

III. LEGAL MALPRACTICE LAWSUIT

On June 29, 2022, Gill sued Scheibmeir, as well as his law firm. Gill alleged that the law firm committed legal malpractice in effectuating the sale of RG Construction because the law firm failed to ensure "all reasonable and necessary collateral to protect [his] interests from a potential future default." CP at 8. Specifically, the law firm failed to ensure Gill would have security interests in the company's real estate, equipment, or future accounts receivable. Noting that the Internal Revenue Service had "recorded tax liens against the real estate owned by RG Construction," Gill argued that the liens "impaired [his] interest in" getting payment for the company. CP at 7.

The law firm answered that Gill's claim was barred by the statute of limitations. The statute of limitations period for legal malpractice claims is three years. RCW 4.16.080(3); *Huff v. Roach*, 125 Wn. App. 724, 729, 106 P.3d 268 (2005).

Gill then sought partial summary judgment, asking the trial court to conclude that he commenced the lawsuit within the statute of limitations period and that the law firm breached its duty of care to him.

A.      Statute of Limitations Arguments

Gill argued that the statute of limitations period did not begin to run until RG Construction filed for bankruptcy on April 28, 2022, which was when he "suffered actual damage due to the lack of adequate security." CP at 34. He contended that if he had tried to sue the law firm before "the RG Construction bankruptcy filing, his lawsuit would have been dismissed because he would not have been able to establish that the lack of adequate security had proximately caused him any damage." *Id.* Thus, his claims against the law firm did not accrue until RG Construction's

bankruptcy filing. And Gill argued in the alternative that under the discovery rule, the statute of limitations did not start to run until October 1, 2019, when he learned that the law firm "had failed to provide him with any security in" RG Construction's assets. CP at 35. Gill did not make any argument based on continuous representation.

The law firm responded that under the discovery rule, the statute of limitations began running when Gill discovered or *should* have discovered the facts giving rise to his cause of action, and Gill should have discovered his lack of a security interest in RG Construction's tangible assets by reviewing the plain language of the sale agreement when he sold the company in 2014 or when Hicks first failed to make payments in 2015. And it disputed Gill's "contention that he did not suffer actual injury until RG Construction filed for bankruptcy," pointing out that Gill "either knew or should have known that he suffered some appreciable damage" in 2016 and 2017 when RG Construction and Hicks incurred federal tax liens, which took priority over unsecured debts. CP at 203-04.

B.        Breach of the Duty of Care Arguments

Gill argued that the law firm breached its duty of care to him when it failed to advise him to retain a security interest in RG Construction's tangible assets. Gill provided declarations from two experts: a commercial litigation attorney and a certified public accountant who had worked with him and with Scheibmeir.

The commercial litigation attorney declared that while he had personally "sold companies using a stock pledge agreement," he had "never done so without also providing a security interest against the tangible assets in favor of the seller." CP at 180. He opined that because Hicks "needed seller financing to be able to buy" RG Construction, the law firm "should have demanded, as any

bank would have done, that the extension of credit" be backed by such a security interest. CP at 181. He explained that if the law firm had done so, Gill "would have been first in line to receive the proceeds of the sale of the company assets in the event of a business failure." CP at 181. He further explained that without "a security interest against the tangible assets," Gill was left with "an empty bag because the buyer caused the business to incur debts in excess of the value of its assets." *Id.* He added that he was "unaware of any tax benefit for [Gill] based on" the structure of the sale, and that any tax benefit would have been worth far less than a recovery through a security interest in RG Construction's tangible assets. *Id.*

The accountant declared that he did not advise Gill or Scheibmeir to refrain from retaining a security interest in RG Construction's tangible assets. And he said he was "not aware of any potential tax savings or other business advantage" Gill would have received by foregoing such a security interest. CP at 185.

The law firm responded that it did not breach its duty of care to Gill. Scheibmeir declared that in his "professional expert opinion," his structuring of the sale "complied with the standard of care for attorneys in the State of Washington." CP at 216. He said Gill had advised him "that he wanted to take the company back quickly in the event" of default, and that was "exactly what the sales documents . . . allowed him to do." *Id.* He explained that selling RG Construction's shares of stock—as opposed to selling the tangible assets comprising the business—gave Gill the ability "to quickly recover the stock" in the event of default. CP at 214. Gill could "thus retake possession of the company" and get "complete control over all company assets and any decision as to what to do with those assets." *Id.* He further explained that if Gill had alerted him to Hicks' default earlier,

he could have advised Gill of "effective remedies that would have avoided his loss," such as immediately regaining control of the company or negotiating for more collateral. CP at 215.

Scheibmeir's declaration also contradicted the accountant's declaration. Scheibmeir declared that before the sale, Gill asked him to consult with the accountant, and the accountant recommended a stock purchase because of its tax benefits.

C.      Trial Court's Decision

After a hearing, the trial court denied Gill's motion for partial summary judgment.

Regarding the statute of limitations, the trial court said that if the law firm had moved to dismiss the case based on this issue, it would have felt "compelled to grant" the motion. Verbatim Rep. of Proc. (VRP) at 22. It explained that Gill should have discovered his lack of a security interest in RG Construction's tangible assets before he signed the sale agreement on January 24, 2014, as well as when Hicks failed to make his first monthly payment in 2015. Addressing Gill's argument that he did not experience actual injury allowing him to sue for malpractice until RG Construction filed for bankruptcy, the trial court said "injury is the invasion of a legal interest," and Gill's legal interest was invaded when Hicks "incurred a series of federal tax liens in 2016 and 2017." VRP at 21-22.

Regarding the duty of care, the trial court said it could not grant summary judgment because it thought the commercial litigation attorney essentially declared that there was only one acceptable way to structure the transaction at issue, and it did not believe "that the sale of a business with real property and hard assets can only be handled in one way." VRP at 18.

8

The parties then stipulated that Gill reserved the right to appeal the denial of summary judgment, but the case would otherwise be dismissed. The trial court approved the stipulation and dismissed the case.

Gill appeals the denial of summary judgment and dismissal.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court's dismissal on summary judgment de novo, performing the same inquiry as the trial court. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 569, 459 P.3d 371 (2020). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "'A material fact is one upon which the outcome of the litigation depends.'" *Mattingly v. Palmer Ridge Homes, LLC*, 157 Wn. App. 376, 387, 238 P.3d 505 (2010) (quoting *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963)). A genuine issue of material fact exists where "reasonable minds could disagree on the facts controlling the outcome of the case." *Mackey*, 12 Wn. App. 2d at 569.

"When determining whether an issue of material fact exists," we "must construe all facts and inferences in favor of the nonmoving party." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). On summary judgment, "a nonmoving party's declaration must be taken as true and can create a genuine issue of material fact even if it is 'self-serving.'" *Mackey*, 12 Wn. App. 2d at 575 (quoting *Reagan v. Newton*, 7 Wn. App. 2d 781, 806, 436 P.3d 411 (2019)).

II. STATUTE OF LIMITATIONS

"As an affirmative defense, the statute of limitations is a matter on which the defendant bears the burden of proof." *Kiona Park Ests. v. Dehls*, 18 Wn. App. 2d 328, 336, 491 P.3d 247 (2021). The statute of limitations period for legal malpractice claims is three years. RCW 4.16.080(3); *Huff*, 125 Wn. App. at 729. The statute of limitations period "begins to accrue when the plaintiff has a right to seek legal relief." *Cawdrey v. Hanson Baker Ludlow Drumheller, P.S.*, 129 Wn. App. 810, 816, 120 P.3d 605 (2005).

A.     Discovery Rule

Gill argues that the statute of limitations does not bar his malpractice claim because his cause of action did not accrue "until at least October 1, 2019[,] when [he] learned that he could not . . . repossess the RG Construction equipment." Appellant's Opening Br. at 29. Gill argues that there is at least a material factual issue concerning whether he "knew or reasonably should have discovered" that he had claims against the law firm earlier. *Id.* at 33. And he argues that he could not have sued when the Internal Revenue Service began recording tax liens against RG Construction because "Scheibmeir's malpractice had not proximately caused Gill any damage at that point." *Id.* at 27-28. We disagree.

In situations where a plaintiff could not have recognized their injury when it occurred, the statute of limitations begins to run when the plaintiff discovers—or, in the exercise of reasonable diligence, should have discovered—the facts giving rise to their claim. *Cawdrey*, 129 Wn. App. at 816; *Davis v. Davis Wright Tremaine, L.L.P.*, 103 Wn. App. 638, 655, 14 P.3d 146 (2000). "The rule does not specifically require knowledge of the existence of a legal cause of action." *Huff*, 125 Wn. App. at 729. "Instead, the statute of limitations begins to run when 'the plaintiff knew or

should have known all of the essential elements of the cause of action.'" *Id.* (internal quotation marks omitted) (quoting *Matson v. Weidenkopf*, 101 Wn. App. 472, 482, 3 P.3d 805 (2000)).

The elements of a legal malpractice case are duty, breach, causation, and injury, with injury being the invasion of another person's legal interest. *Id.* at 729-30. As the *Huff* court explained, injury and damages are different concepts in this context, even though the terms are often used interchangeably. *Id.* at 729. Injury "is the invasion of another's legal interest, while damages are the monetary value of those injuries." *Id.* at 730. The *Huff* court declined to adopt a rule where recovery of damages arising from malpractice had to be certain before the statute of limitations would accrue. *See id.* at 729-32. The statute of limitations accrued in that case when the Huffs' attorney "missed the statute of limitations, effectively invading [the Huffs'] legal interests," even though it was not yet clear that the Huffs' opponents would raise the statute of limitations as a defense. *Id.* at 730.

Here, in their arguments on appeal about the statute of limitations, the parties dispute only when Gill should have known about the injury. We hold that the statute of limitations bars Gill's claim. As Gill stated in his complaint, the injury—the invasion of his legal right—occurred when the Internal Revenue Service recorded its first tax lien against RG Construction. Gill later argued differently before the trial court, but he did not move to amend his complaint.

Moreover, the fact that the tax lien injured Gill has support in our record and in case law. Before the lien, Gill's ability to regain control of RG Construction in its entirety was unencumbered. But when the Internal Revenue Service recorded the lien, it obtained an interest in

RG Construction's property that was superior to Gill's as an unsecured creditor.[2] Gill lacked a superior secured interest in that property, so the lien allowed the Internal Revenue Service to take the property to pay the tax debt to the extent it had a secured interest. *United States v. Allahyari*, 980 F.3d 684, 690 (9th Cir. 2020) (to get priority over a subsequent federal tax lien, security interest must have been perfected); BLACK'S LAW DICTIONARY 507 (11th ed. 2019) (defining unsecured debt as "debt not supported by collateral or other security").

Gill contends that he could not have successfully sued the law firm for legal malpractice until it was clear that Hicks was not going to pay him, in particular, until the date that RG Construction filed for bankruptcy. Until then, Gill argues, he could not have proven that he had incurred any damages. But this argument ignores that Gill's legal interest, his ability to collect against RG Construction's assets, was first invaded when the tax lien took priority because Gill's interest was unsecured. Under *Huff,* it is the invasion of the legal interest that causes the statute of limitations to accrue. 125 Wn. App. at 729-30. And, as the law firm pointed out in oral argument, after learning about the lien, Gill could have preserved any claim he had against the firm by entering into an agreement with the law firm to toll the statute of limitations period. Or Gill could have filed a complaint against the firm and then moved to stay the proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket.").

---

[2] *Understanding a Federal Tax Lien*, U.S. INTERNAL REVENUE SERV. (explaining that a federal tax lien protects the federal government's interest in a taxpaying entity's "property, including real estate, personal property[,] and financial assets"), https://www.irs.gov/businesses/small-businesses-self-employed/understanding-a-federal-tax-lien (last updated May 17, 2023).

The first federal tax lien in our record is dated August 17, 2016. Gill testified that he was aware of a tax lien in 2015. In either case, the injury occurred more than three years before Gill commenced the 2022 lawsuit. Therefore, we hold that the statute of limitations bars Gill's legal malpractice claim.

B.        Continuous Representation Rule

Gill argues in the alternative that the continuous representation rule tolled the statute of limitations for his legal malpractice claim. In legal malpractice actions, the continuous representation rule "tolls the statute of limitations until the end of an attorney's representation of a client in the same matter in which the alleged malpractice occurred." *Janicki Logging & Constr. Co. v. Schwabe, Williamson & Wyatt, P.C.*, 109 Wn. App. 655, 661, 37 P.3d 309 (2001). Gill contends that the statute of limitations period for his malpractice claim began running when the law firm stopped representing him in 2022, so this claim was timely.

The law firm responds that we should not consider this argument because Gill failed to make it below. Gill replies that "even if the parties did not explicitly mention the continuous representation rule by name in the trial court," the law firm has "not established that the appellate record is deficient in any respect for the purpose of applying" the rule. Appellant's Reply Br. at 12. We agree with the law firm.

"On review of an order granting or denying a motion for summary judgment," we "consider only evidence *and issues* called to the attention of the trial court." RAP 9.12 (emphasis added). "'The purpose of this limitation is to effectuate the rule that the appellate court engages in the same inquiry as the trial court.'" *Gartner, Inc. v. Dep't of Revenue*, 11 Wn. App. 2d 765, 777, 455 P.3d 1179 (2020) (internal quotation marks omitted) (quoting *Mithoug v. Apollo Radio of*

*Spokane*, 128 Wn.2d 460, 462, 909 P.2d 291 (1996)). Therefore, a party must inform the trial court "of the rules of law it wishes the court to apply and afford the *trial court* an opportunity to correct any error." *Ainsworth v. Progressive Cas. Ins. Co.*, 180 Wn. App. 52, 81, 322 P.3d 6 (2014) (emphasis added).

While appellate courts have the discretion to waive this rule, this discretion is rarely exercised, especially when the alleged error does not implicate a constitutional right. *See id.*; *Hiesterman v. Dep't of Health*, 24 Wn. App. 2d 907, 913, 524 P.3d 693 (2022), *review denied*, 1 Wn.3d 1020 (2023). For example, in *Silverhawk, LLC v. KeyBank National Association*, a breach of contract case, Division One held that a company's new argument regarding contract terms was "untimely" under RAP 9.12 where the company made the argument for the first time on appeal, even though the contract was in the record. 165 Wn. App. 258, 265, 268 P.3d 958 (2011).

Here, Gill did not argue below that the continuous representation rule tolled the statute of limitations period. Given that the trial court did not have the opportunity to correct the alleged error, we decline to review it. While Gill contends that the record is not deficient for the purpose of applying the continuous representation rule, the record's sufficiency with regard to the relevant facts does not prevent application of RAP 9.12. *Silverhawk*, 165 Wn. App. at 265. The purpose of RAP 9.12 is ensuring "'that the appellate court engages in the same inquiry as the trial court.'" *Gartner*, 11 Wn. App. 2d at 777 (internal quotation marks omitted) (quoting *Mithoug*, 128 Wn.2d at 462). In this case, the trial court lacked the opportunity to rule on the application of the continuous representation rule with the benefit of argument from both sides. As a consequence, there is no trial court ruling on this issue for us to review. And Gill seeks *reversal* of the trial court's decision, so the principle that we can *affirm* on any ground supported by the record under

RAP 2.5 does not help him. Moreover, Gill does not explain why he did not raise continuous representation when he brought a summary judgment motion. We therefore decline to make an exception to RAP 9.12.

### III. ADDITIONAL ISSUES

Gill argues that there was no genuine issue of material fact regarding the law firm's breach of its duty of care, contending that the commercial litigation attorney's expert testimony established as a matter of law that the law firm's representation in the sale of RG Construction fell "below the standard of care." Appellant's Opening Br. at 38. Given our holding that the statute of limitations barred Gill's legal malpractice claim, we need not reach this argument.

Along with his malpractice claim, Gill brought a breach of fiduciary duty claim below. Gill alleged that the law firm breached its fiduciary duty to him by continuing to represent him after it discovered, or should have discovered, that its representation fell below the standard of care, creating a conflict of interest. The trial court did not address this claim in its ruling on summary judgment, and after the summary judgment hearing, the parties agreed to dismiss the entire case with prejudice pending this appeal.

The parties' briefing, both below and on appeal, focused on the legal malpractice claim. This focus is understandable, as the viability of the breach of fiduciary duty claim depends on proving malpractice. Because the trial court dismissed the breach of fiduciary duty claim, and because Gill did not independently brief the issue on appeal, we do not address it here.

### CONCLUSION

We affirm the trial court's denial of summary judgment and dismissal of the case.

No. 58057-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J

We concur:

Cruser, J.

Che, J.