**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 18-35956 |
| v. | D.C. No. 2:17-cv-00668-TSZ |
| KOMRON M. ALLAHYARI, *Defendant*, | |
| and | |
| SHAUN ALLAHYARI, *Defendant-Appellant.* | |

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, | No. 18-36076 |
| v. | D.C. No. 2:17-cv-00668-TSZ |
| KOMRON M. ALLAHYARI; SHAUN ALLAHYARI, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted February 7, 2020
Seattle, Washington

Filed November 13, 2020

Before:  Milan D. Smith, Jr. and N. Randy Smith, Circuit
Judges, and John R. Tunheim,[*] Chief District Judge.

Opinion by Chief District Judge Tunheim

**SUMMARY**[**]

**Tax**

The panel reversed the district court's determination that
Shaun Allahyari's alleged security interest in property
owned by his son, Komron Allahyari, a tax delinquent, was
not entitled to priority over later-recorded federal tax liens;
and remanded to the district court for reconsideration.

At issue in the case was real property owned by Komron
Allahyari and two related instruments: (1) the 2005 Deed of
Trust; and (2) a deed of trust that secured a $400,000 loan

_____

[*] The Honorable John R. Tunheim, United States Chief District
Judge for the District of Minnesota, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

Komron took out from the Boeing Employees' Credit Union ("BECU") to refinance the real property in 2003. In order to avoid foreclosure, Shaun paid off and took assignment of the 2003 BECU loan and loan security. The Internal Revenue Service determined that Komron owed unpaid taxes, penalties, and interest. The United States filed this civil action to enforce the tax liens. Komron and Shaun argued that the 2005 Deed of Trust and Shaun's interest in the BECU loan should be senior to the tax liens.

The panel held that the district court erred: 1) by holding that the deed of trust between father and son was not entitled to priority over the later-recorded federal tax liens under local law; and 2) by failing to consider whether past consideration was sufficient to support an agreement giving rise to a security interest under Washington law. The panel concluded that the district court applied an incorrect standard of proof under Washington's Fraudulent Transfer Act. In addition, the panel concluded that, because 26 U.S.C. § 7403(a) authorized the United States to subject any property or interest of the delinquent to the payment of such tax or liability, the United States could assert any affirmative defenses that would be available to the delinquent – including that the statute of limitations has run on payments due to senior liens.

The panel remanded for reconsideration of whether Shaun Allahyari had parted "with money or money's worth" when acquiring the 2005 Deed of Trust, and for application of the correct standard of proof and for recalculation of the value of the senior lien, taking into account any statute of limitations defense raised by the United States regarding Washington's applicable six-year statute of limitations.

## COUNSEL

Avi J. Lipman (argued), Gregory J. Hollon, and Curtis C. Isacke, McNaul Ebel Nawrot & Helgren PLLC, Seattle, Washington, for Defendant-Appellant/Cross-Appellee.

Komron R. Allahyari, Mercer Island, Washington, pro se Defendant/Cross-Appellee.

Karen G. Gregory (argued) and Deborah K. Snyder, Attorneys; Richard E. Zuckerman, Principal Deputy Assistant Attorney General; Tax Division, United States Department of Justice; for Plaintiff-Appellee/Cross-Appellant.

## OPINION

TUNHEIM, Chief District Judge:

Shaun Allahyari ("Shaun") appeals the district court's determination that his alleged security interest in property owned by his son, Komron Allahyari ("Komron"), a tax delinquent, was not entitled to priority over later-recorded federal tax liens. He argues that the district court erred when it found that the alleged security interest was fraudulent under Washington's Fraudulent Transfer Act, Wash. Rev. Code. § 19.40.041(a)(1). The United States cross-appeals the district court's conclusion that it could not, under 26 U.S.C. § 7403, assert a state-law statute-of-limitations defense to the court's valuation of a security interest that was found to be senior to federal tax liens.

We first conclude that the district court erred: (1) by holding that the deed of trust between Shaun and Komron

recorded on July 26, 2005 ("2005 Deed of Trust") was not entitled to priority over the later-recorded federal tax liens under local law; the 2005 Deed of Trust is protected under Washington law; and (2) by failing to consider whether past consideration is sufficient to support an agreement giving rise to a security interest under Washington law.  Second, we conclude that the district court applied the incorrect standard of proof to its finding under the Fraudulent Transfer Act.  Lastly, we conclude that, because § 7403(a) authorizes the United States to "subject any property, of whatever nature, of the delinquent, or in which [the delinquent] has any right, title, or interest, to the payment of such tax or liability," the United States may assert any affirmative defenses that would be available to the delinquent—including that the statute of limitations has run on payments due to senior liens.

Accordingly, we reverse and remand to the district court for reconsideration of whether Shaun had parted "with money or money's worth" when acquiring the 2005 Deed of Trust, and for application of the correct standard of proof and for recalculation of the value of the senior lien, taking into account any statute of limitations defense raised by the United States regarding Washington's six-year statute of limitations.

## FACTUAL AND PROCEDURAL BACKGROUND

At issue in this case are property owned by Komron on Mercer Island and two related instruments: (1) the 2005 Deed of Trust; and (2) a deed of trust ("BECU Deed of Trust") that secured a $400,000 loan Komron took out from the Boeing Employees' Credit Union ("BECU") to refinance the Mercer Island property in 2003.

## I.   Mercer Island Property Transactions

Komron and Shaun have a long history of financial transactions and entanglements relating to the Mercer Island property.   On March 29, 1991, Komron executed a promissory note ("1991 Promissory Note") to his parents, in which Komron promised to pay $50,000 in satisfaction of a loan his parents had given him to purchase the Mercer Island property.   On April 22, 1991, Komron and his parents acquired the property.  During the years following the 1991 Promissory Note, Shaun regularly requested payment on the note, and Komron failed to make payments until he repaid a significant part of the loan in 1998.  Afterwards, Komron's parents transferred their joint interest in the Mercer Island property to Komron, who solely owned it from September 1999 onward.

In 2003, Komron took out a $400,000 loan from BECU, which was secured by the BECU Deed of Trust on the Mercer Island property.   In 2010, Shaun learned that Komron was at risk of losing the Mercer Island property because he had defaulted on the BECU loan.  In order to prevent foreclosure, Shaun paid off and took an assignment of the 2003 BECU loan and loan security.

After years of failing to file federal income-tax returns, Komron filed for tax years 1999–2002 and 2004 in April of 2005.  The IRS subsequently determined that Komron owed unpaid income taxes, trust-fund recovery penalties, and interest.  Komron failed to make payment in full on these assessments and, at the time of the district court decision in September 2019, owed the United States $3.9 million.

Initially, Komron hid these debts from Shaun.  When Komron eventually told Shaun about the outstanding tax liabilities, Shaun became concerned that the United States

would be able to record tax liens against the Mercer Island property and then force the sale of the property to satisfy the liens.  Shaun and Komron then executed the 2005 Deed of Trust on the Mercer Island property, which purported to secure payment of $471,322 at 12% interest.  This amount apparently represented the preexisting debts owed by Komron to Shaun, because Shaun stated (both in his deposition and at trial) that he did not loan Komron any additional money at the time the 2005 Deed of Trust was executed.

The 2005 Deed of Trust was recorded on July 26, 2005. The first notice of federal tax liens was recorded against Komron on October 4, 2005.

When the United States filed a civil action to enforce the tax liens in April 2017, Komron and Shaun argued that the 2005 Deed of Trust and Shaun's interest in the BECU loan should be senior to the tax liens.  The United States argued that the 2005 Deed of Trust was not a security interest under the Internal Revenue Code because it was a fraudulent conveyance under Washington law.  It also argued that some scheduled payments under the BECU Deed of Trust were time barred by Washington's six-year statute of limitations and therefore should not be included in the value of any senior claim under the BECU Deed of Trust.

## II.  Proceedings in the District Court

After a bench trial, the district court found that the United States had valid federal tax liens on the Mercer Island property and was therefore entitled to foreclose those liens and sell the property.  The district court also found that Shaun had priority position over the federal tax liens based on the BECU Deed of Trust but not the 2005 Deed of Trust.

The district court reasoned that Shaun did not have priority based on the 2005 Deed of Trust because it was not a security interest under 26 U.S.C. § 6323(a) and because the 2005 Deed of Trust was a fraudulent conveyance under state law.  First, the district court determined that the 2005 Deed of Trust did not entitle Shaun to priority position because Shaun had either actual or constructive knowledge of Komron's tax liabilities prior to recording the 2005 Deed of Trust.  It also determined that, because there had been no exchange of money or money's worth when the 2005 Deed of Trust was granted or recorded, it was not a security interest under federal law.  Finally, the district court found that the 2005 Deed of Trust was invalid under Washington's Uniform Fraudulent Transfer Act.  Therefore, Shaun did not qualify as a holder of a security interest based on the 2005 Deed of Trust and the United States' tax liens had priority.

However, the district court did conclude that Shaun was entitled to priority over the United States' federal tax liens with respect to the BECU Deed of Trust.  Shaun "stepped into BECU's 'shoes' when he purchased the BECU loan," so the assignment was a bona fide debt.  The district court determined that Shaun is entitled to the same priority position as BECU would have had based on the original loan.

The district court ordered the Mercer Island property to be sold and, after deducting the costs of sale and any amount owing in back taxes to King County, found that Shaun was entitled to the next $510,766.26 of the proceeds, based on the principal and interest owing on the BECU Deed of Trust.  The district court then held that the United States was entitled to the remainder of the proceeds of the sale until its tax liens were satisfied.

Plaintiffs timely appealed and the United States timely cross-appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review factual findings by the district court for clear error and review its conclusions of law de novo. *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1427 (9th Cir. 1996) (citing Fed. R. Civ. P. 52(a).

## ANALYSIS

When a person is "liable to pay any [federal] tax" but, "after demand," neglects or refuses to pay, a lien equal to the amount past due—plus penalties, costs, and interest—attaches to "all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. A tax lien created under § 6321 "shall not be valid as against any . . . holder of a security interest . . . until notice thereof" is given. *Id.* § 6323(a). The putative holder of such a security interest bears the burden of showing that they qualify for the protection of § 6323(a). *See, e.g.*, *MacKenzie v. United States*, 109 F.2d 540, 542 (9th Cir. 1940) (holding that, under the predecessor of § 6323(a), "in order to be protected, the claimant must show" that they are within one of the protected third-party classes).

The district court found that Shaun had failed to meet his burden. *United States v. Allahyari*, No. C17-668, 2018 WL 4357487, at *7 (W.D. Wash. Sept. 13, 2018). It held that the 2005 Deed of Trust was not a "security interest" for the purposes of § 6323 because it failed to meet the definition of that term as provided in § 6323(h). *Id.*

## I.  Security Interest

Section 6323 defines a security interest as "any interest in property acquired by contract for the purpose of securing payment or performance of any obligation or indemnifying against loss or liability."  26 U.S.C. § 6323(h)(1).  The statute also requires that (A) "the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation" and (B) "at such time, the holder has parted with money or money's worth." *Id.*

The district court determined that Shaun failed on both the protected-by-local-law and money-or-money's-worth prongs.  The 2005 Deed of Trust was not protected by local law "because Shaun had actual and/or constructive notice of Komron's tax liabilities prior to recording the 2005 Deed of Trust." *Allahyari*, 2018 WL 4357487, at *6.  The district court also held that Shaun failed to "contemporaneously" part with money or money's worth.  *Id.* at *7.  We will address each conclusion in turn.

### A.  Notice

The district court determined that § 6323 would afford priority to a security interest, but only if that interest "has become protected under local law," which thereby implicated Washington's race-notice recording statute.  *Id.* at *6 (quoting 26 U.S.C. § 6323(h)(1)).[1]  With this, we agree.

---

[1] The district court cited *Kim v. Lee*, 31 P.3d 665, 668, *as amended* (Dec. 12, 2001), *opinion corrected*, 43 P.3d 1222 (Wash. 2001), when reaching its conclusion.  The citation to *Kim*—a case that revolved primarily around questions of equitable subrogation and was not a model of clarity—has created some confusion among the parties.  We find that another case, interpreting Washington's recording statute to confer

The district court then reasoned that, because Shaun had either actual or constructive notice of the federal tax liens, his security interest was not entitled to priority under § 6323. *Id.* at *6. We disagree.

First, "we must keep in mind that '[a] federal tax lien is wholly a creature of federal statute,'" *TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1463 (9th Cir. 1993) (quoting *Kivel v. United States*, 878 F.2d 301, 303 (9th Cir. 1989)), and that federal law governs the priority of competing liens, *Aquilino v. United States*, 363 U.S. 509, 513–15 (1960). As we noted in *MacKenzie*, before 1913, "no third person was protected under any circumstances from an unrecorded federal tax lien." 109 F.2d at 542. At that time, however, Congress amended the federal tax lien statute to protect mortgagees, purchasers, and judgment creditors against unrecorded federal tax liens, *id.*, and, in 1966, extended the same protection to holders of a security interest, Federal Tax Lien Act of 1966, Pub. L. 89-719, 80 Stat. 1125, 1125.**[2]** The relevant provision, § 6232(a), now reads: "The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a).

In short, federal tax liens are invalid against the interests held by these specific classes until the United States properly

---

superior status only to one who acquires a property interest with "no actual or constructive notice" of another's prior interest, is more apt. *See Tomlinson v. Clarke*, 825 P.2d 706, 712 (Wash. 1992).

**[2]** For all other third parties, the common-law principle, "the first in time is the first in right," remains the rule. *United States v. McDermott*, 507 U.S. 447, 449 (1993).

records notice of the liens. *TKB*, 995 F.2d at 1466; *see also United States v. Vohland*, 675 F.2d 1071, 1074–75 (9th Cir. 1982). Further, because "'we must deem the United States' lien to have commenced no sooner than the filing of notice,'" it is "unimportant" whether a party protected under § 6323(a) had notice of any prior-existing but not-yet recorded federal tax liens. *TKB*, 995 F.2d at 1464–65 (quoting *United States v. McDermott*, 507 U.S. 447, 449 (1993)). In fact, as we noted in *TKB*, Congress explicitly rejected an attempt to preclude protection under §6323(a) for those who acquired an interest in property with actual knowledge of federal tax liens.[3] *See id.* at 1466 n.4.

Therefore, we extend our holding in *TKB*, which involved a subsequent purchaser, to holders of security interests, because both classes share the same level of protection under § 6323(a).[4] We thus conclude that § 6323(a) protects security interests acquired with or without knowledge of unfiled or later filed tax liens. *Accord In re Haas*, 31 F.3d 1081, 1088 (11th Cir. 1994) ("Actual knowledge by a secured creditor of the IRS's lien prior to filing does not enhance the IRS's position vis-a-vis that creditor[.]"). Accordingly, Shaun's actual knowledge of the federal tax liens, at least three of which had already attached to Komron's property when he recorded his 2005 Deed of

---

[3] This rejection occurred before the 1966 amendment of § 6323(a), which added security interests to the protected list, but this does not alter our analysis, for Congress specifically added security interests to the list of interests protected by § 6323(a), whereas other interests protected under other provisions of § 6323 are protected by differing means.

[4] We note that *TKB* similarly drew upon *McDermott*, which involved a judgment creditor, to inform its analysis of § 6323(a), as, again, both interests are provided for under § 6323(a), whereas other protected interests are covered separately.

Trust, did not destroy the priority status of his security interest, for notice of these liens was only recorded after his deed was.  The district court erred by relying on Washington law and reaching the opposite conclusion.

However, this is not to say that the state law referenced by § 6323 in relation to security interests is wholly unimportant to our analysis.  Instead, while federal law determines priority between competing interests, state law helps determine whether Shaun's 2005 Deed of Trust is a qualifying "security interest" under § 6323, as the first requirement of the statute is that a security interest "has become protected under local law against a subsequent judgment lien[.]"  28 U.S.C. § 6323(h)(1).

Therefore, for Shaun's security interest to qualify for priority, it must have become protected under local law before the United States filed notice of its tax liens.  Under Washington law, a security interest must be perfected to be protected against a subsequent judgment lien.  Wash. Rev. Code §§ 62A.9A-102(a)(52)(A), 62A.9A-317(a)(2)(A).  When a security interest is created by deed of trust, an individual must record the deed in the county where the property is located to perfect the security interest.  Wash. Rev. Code §§ 61.24.020, 62A.9A.308(e), 65.08.060, 65.08.070.[5]    Accordingly, under Washington state law,

---

[5] The district court read the significance of § 65.08.070 backwards in time; that is, it assessed whether Shaun's security interest would have been protected against an already perfected judgment lien creditor. *Allahyari*, 2018 WL 4357487, at *6.  Section 6323(h)(1), however, clearly states that the relevant inquiry is whether the security interest is protected against "subsequent" judgment liens.  That is, § 6323(h)(1) describes the legal status a security interest must obtain to have priority over interests perfected later in time.  This is further indicated by Congress's use of the present perfect, "has become," which signifies an

Shaun's security interest would have been subject to destruction by a subsequent judgment lien only until he recorded the 2005 Deed of Trust.[6]

By recording the 2005 Deed of Trust on July 26, 2005, Shaun perfected his security interest under Washington state law and protected it from that day forward. Because he perfected the 2005 Deed of Trust before the United States filed notice of its tax liens, we hold that Shaun's security interest has priority over the federal tax liens, *see McDermott*, 507 U.S. at 450, at least as far as the first prong of § 6323(h)(1) is concerned.

### B. Money or Money's Worth

The district court concluded that Shaun failed to satisfy the money-or-money's-worth prong of § 6323(h)(1) because there was no contemporaneous exchange. Although the term

---

action that began in the past and extends into the present, or until the United States files notice of its tax lien. *See, e.g., In re Restivo Auto Body, Inc.*, 772 F.3d 168, 174–75 (4th Cir. 2014).

[6] We note that Washington state law allows a potential judgment lien creditor to file a *lis pendens*, which provides notice in much the same way as recording notice of a federal tax lien does. *See* Wash. Rev. Code. § 4.28.320. We also note that sister circuits have interpreted the phrase "protected under local law against a subsequent judgment lien" to be equivalent to being protected against a "lien creditor" as defined by the Uniform Commercial Code*, see In re Haas*, 31 F. 3d at 1087; *Dragstrem v. Obermeyer*, 549 F.2d 20, 25 (7th Cir. 1977), which Washington state law mirrors, *compare* U.C.C. § 9-317(a)(2) (formerly § 9-301), *with* Wash. Rev. Code § 62A.9A-317(a)(2). Moreover, the U.C.C. considers knowledge, actual or otherwise, to be irrelevant when determining the priority between competing security interests. *See, e.g.*, U.C.C. § 9-322 cmt. n.4.

is not defined in § 6323, the regulation interpreting the statute defines "money or money's worth" as:

> tangible or intangible property, services, and other consideration reducible to a money value. Money or money's worth also includes any consideration which otherwise would constitute money or money's worth under the preceding sentence which was parted with before the security interest would otherwise exist if, under local law, past consideration is sufficient to support an agreement giving rise to a security interest . . . .

Treas. Reg. § 301.6323(h)-1(a)(3) (as amended in 2011).[7] The Treasury Regulation does not itself require a "contemporaneous" exchange. Instead, it requires determination of whether state law allows past consideration to give rise to a security interest. The district court did not address this question under Washington law—instead citing to a Fourth Circuit case, the facts of which did not necessitate a past-consideration analysis—and erred by assuming contemporaneous exchange was necessary. On remand, to determine whether Shaun "parted with money or money's worth," the district court must determine "whether past consideration is sufficient to support an agreement giving rise to the security interest" under Washington law.

---

[7] The 2011 amendment added the requirement that, even if past consideration was allowable under local law, "the grant of the security interest is not a fraudulent transfer under local law or 28 U.S.C. § 3304(a)(2)." 76 Fed. Reg. 18384, 18388 (Apr. 4, 2011). However, this amendment only applies after April 4, 2011 and therefore is immaterial here.

## II. Fraudulent Transfer

In addition to concluding that the 2005 Deed of Trust was not a security interest under § 6323, the district court also held that the 2005 Deed of Trust was a fraudulent transfer in violation of state law "because Komron intended to 'hinder, delay, or defraud' the United States." *Allahyari*, 2018 WL 4357487, at \*7 (quoting Wash. Rev. Code § 19.40.041(a)(1) (2004) ("A transfer made . . . by a debtor is fraudulent . . . if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud[.]")). The district court based this conclusion on its determination that the United States "ha[d] established the elements of a fraudulent transfer by a preponderance of the evidence." *Id.* at \*8.

Washington has long required clear and satisfactory proof to find a fraudulent transfer under the "hinder, delay, or defraud" prong of section 19.40.041. *See, e.g.*, *Clearwater v. Skyline Const. Co., Inc.*, 835 P.2d 257, 266 (Wash. Ct. App. 1992) (applying the clear-and-satisfactory-proof standard to Wash. Rev. Code § 19.40.041); *Sparkman & McLean Co. v. Derber*, 481 P.2d 585, 591 (Wash. Ct. App. 1971) (applying the clear-and-satisfactory-proof standard to Washington's previous fraudulent-transfer statute (citing *Rohrer v. Snyder*, 69 P. 748, 750 (Wash. 1902) ("Where the good faith of a conveyance is assailed, it is not enough that the evidence may cause a suspicion as to its good faith. The evidence must be clear and satisfactory, and such as convinces the mind that the conveyance is in reality fraudulent."))).

The United States argues otherwise,[8] relying on a 2013 decision from the bankruptcy court of the Western District of Washington, which stated that "[t]he Trustee, as plaintiff, has the burden of proving the elements of a fraudulent conveyance under federal and state law by a preponderance of the evidence." *In re Consol. Meridian Funds*, 487 B.R. 263, 267 (Bankr. W.D. Wash. 2013). However, that decision cites no authority and appears simply to misstate the law. The United States also relies on a comment from the Uniform Voidable Transactions Act ("UVTA") which states "proof of intent to 'hinder, delay, or defraud' a creditor . . . is sufficient if made by a preponderance of the evidence." Unif. Voidable Transactions Act § 4, cmt. 10 (Unif. Law Comm'n 2014). The comment reflects the addition in 2014 of a subsection (c), which specifically adopts a preponderance-of-the-evidence standard of proof. *Id.* § 4(c). Washington did not adopt the UVTA until 2017, 2017 Wash. Sess. Laws 238, 245, and it applies only to transfers made after July 23, 2017. *Id.* at ii. Therefore, both authorities on which the United States relies are inapposite. Because the transfer at issue in this case took place more than a decade before Washington adopted the UVTA, the clear-and-substantial-proof standard applies to whether the 2005 Deed of Trust is a fraudulent transfer under the then-applicable version of Wash. Rev. Code § 19.40.41(a)(1) (2004).

---

[8] In his opening brief, Shaun noted that the standard of proof for intent to hinder, delay, or defraud is clear and satisfactory proof. Although Shaun did not argue further regarding the standard of proof, the United States argued in its response that the district court had correctly weighed the evidence of fraud using the preponderance-of-the-evidence standard. Shaun then extensively argued the standard-of-proof issue in his response brief. Because Shaun cited the correct standard in his opening brief and the United States provided contrary argument in its response, we conclude Shaun has not forfeited the argument.

Because the district court used the incorrect legal standard in making its determinations, we remand for the district court to reweigh the evidence using the clear-and-satisfactory-proof standard of proof.**[9]**

## III.    The United States' Cross Appeal

The United States may bring a civil action to enforce a tax lien in a district court and "to subject any property, of whatever nature, of the delinquent, or in which [the delinquent] has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a). The district court must then "adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property" and, if the court concludes the United States has a "claim or interest," it will generally be obliged to "decree a sale of such property." *Id.* § 7403(c); *see also United States v. Rodgers*, 461 U.S. 677, 706–11 (1983)) (acknowledging that Congress amended § 7403(c) to read that district courts "*may* decree a sale" in 1936 but holding that district courts do not have "unbridled discretion" to decline to do so).

The United States argued in the district court that, whatever the value of Shaun's senior lien from the BECU Deed of Trust, it must not include the value of payments for which the six-year statute of limitations had run. The district

---

**[9]** In its response, the United States argues for the first time that the 2005 Deed of Trust could also be found to be a fraudulent transfer under Wash. Rev. Code § 19.40.051(b) (2004), presumably because that subsection requires a lower standard of proof than section 19.40.41(a)(1) (2004). However, because the United States did not raise this issue before the district court, we will not consider it. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("An issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." (cleaned up)).

court did not address this argument directly; instead it simply concluded that "Shaun is entitled to the same priority position for the interest accrued on the BECU Loan" and calculated the interest as $127,721.52. *Allahyari*, 2018 WL 4357487, at \*9.

Washington has a six-year statute of limitations for any "liability express or implied arising out of a written agreement." Wash. Rev. Code § 4.16.040(1). This statute of limitations applies to monthly installment payments under a deed of trust, as was the case with the BECU Deed of Trust. *See Edmundson v. Bank of Am.*, 378 P.3d 272, 277–78 (Wash. Ct. App. 2016) (holding that the six-year statute of limitations begins to run "for each installment [payment] from the time it became due"). The United States argues that the district court erred by failing to calculate and exclude from its valuation of Shaun's BECU Deed of Trust any payments that would be subject to the relevant statute of limitations.

When "subject[ing] any property . . . in which [the tax delinquent] has any right, title or interest"—that is, when identifying assets to be sold in order to satisfy the lien—the United States "steps into the taxpayer's shoes" and "acquires whatever rights the taxpayer himself possesses." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 725 (1985) (internal quotation marks omitted).[10] Among the rights that Komron possessed vis-à-vis the BECU Deed of Trust was the ability to assert the defense that some past-due payments

---

[10] Although *National Bank of Commerce* concerned the ability of the United States to reach funds from a bank account in which the tax delinquent had a shared contractual right to withdraw and was based on a tax levy rather than a lien action, the Supreme Court's statement that the United States "steps into the taxpayer's shoes" cited to the section of *Rodgers* relating to § 7403. 472 U.S. at 725.

are barred by the six-year statute of limitations. Once the United States stepped into Komron's shoes, via a § 7403 action, there became no reason why it could not assert that defense.

Shaun argues, as he did below, that the United States cannot assert the statute-of-limitations defense because it lacks standing to do so, citing cases relating to third-party enforcement of contracts. This argument is unavailing. The United States is no longer a stranger to the contract between Shaun and Komron. Because the district court determined that the United States has a "claim or interest" in the property, the United States is now standing in Komron's place relative to any encumbrances upon the property. Although Komron might have chosen not to assert such a defense against his father, there is no legal basis to deny that ability to the United States once it has exercised its rights under § 7403.

Because the district court did not consider the effect of the six-year statute of limitations when calculating the value of Shaun's senior lien under the BECU Deed of Trust, we remand for the district court to properly recalculate the value.

## CONCLUSION

For the foregoing reasons, we reverse the district court and remand for the district court to apply the correct standard of proof and to recalculate the value of the senior lien, taking into account any statute of limitations defense raised by the United States regarding Washington's six-year statute of limitations.

**REVERSED** and **REMANDED.**