IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JEFFREY WOOD AND ANNA WOOD, | ) | |
| | ) | No.  39934-6-III |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DUNN & BLACK, PS, a Washington | ) | UNPUBLISHED OPINION |
| Professional Service Corporation &, | ) | |
| ROBERT A. DUNN, Attorney at Law, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — Jeffrey and Anna Wood, former clients of the law firm Dunn &

Black, P.S., brought a malpractice suit against the firm and one of its lawyers.  We affirm

the superior court's dismissal of the suit based on ineffective service of process and the

running of the statute of limitations.

FACTS

Dunn & Black filed a lawsuit on behalf of Jeffrey and Anna Wood (the Woods)

against Milionis Construction concerning the construction of a dream home that became a

nightmare.  Robert Dunn provided most of the services on behalf of the law firm.  The

litigation eventually led to a claim against the construction company's liability insurer.

The dispute is the subject of a Washington Supreme Court decision: *Wood v. Milionis*

*Construction, Inc.*, 198 Wn.2d 105, 492 P.3d 813 (2021).

Dunn & Black represented Jeffrey and Anna Wood for over two years before filing a notice of intent to withdraw on March 8, 2019. On March 12, 2019, Jeffrey wrote a letter to Robert Dunn expressing disappointment in the representation. We attach the letter as an appendix to this opinion. In the letter, Jeffrey charged Dunn with never having represented his and Anna's interests, failing to insist that an insurance company pay to properly fix the home, possessing a conflict of interest by previously representing Milionis, being charged for expert services that should have been paid by the insurance company, and failing to pursue personal liability against Stephen Milionis, owner of the construction company. Dunn & Black's withdrawal became effective on March 22, 2019.

PROCEDURE

On March 10, 2022, Jeffrey and Anna Wood filed a complaint for legal malpractice against Robert Dunn and Dunn & Black (collectively "the attorneys"). The Woods alleged that the attorneys performed negligently when representing them by failing to adequately advise them on settling with Milionis Construction and by failing to disclose a conflict of interest.

A process server attempted to deliver the summons and complaint on Robert Dunn and Dunn & Black on March 14, March 17, April 4, and May 14, 2022 with no avail. The process server was never able to contact Dunn or a representative authorized to receive service on behalf of the attorneys. The details of the attempts follow.

In the afternoon on March 14, 2022, a process server went to the offices of Dunn & Black and spoke with the receptionist, who informed him Robert Dunn was not in the office. The process server left a business card with the receptionist and requested that Dunn call to schedule a time to meet.

In the evening of March 17, a process server again traveled to the offices of Dunn & Black and spoke with the receptionist. This time, the receptionist informed the process server that Robert Dunn was out of the office until later the next week. The receptionist offered to take the summons and complaint, but the process server declined to leave them with her. The process server took one of Dunn's business cards with him as he left.

On April 4, 2022, a process server attempted to deliver service at the offices of Dunn & Black. The process server spoke with Robert Dunn's paralegal, who said that Dunn was not in the office. The process server left his business card with her. Also on April 4, the process server called Dunn and left him a voicemail.

During the morning on May 14, a process server attempted to serve Robert Dunn at his personal residence. The main gate leading to the residence was locked. The server paged Dunn through the callbox near the gate, but the call was forwarded to voicemail.

On the morning of May 22, 2022, process server Rob Uzeta tried to serve Robert Dunn and Dunn & Black at Dunn's home and arrived to find the main gate locked. Similar to the previous process server, Uzeta called the residence using the gate's callbox but received no answer.

Rob Uzeta attempted service again in the evening on May 23. This time, the main gate to Robert Dunn's property was open, but the second gate closer to the home was locked. Uzeta did not serve Dunn or Dunn & Black.

On June 21, 2022, 104 days after Jeffrey and Anna Wood filed their complaint, Rob Uzeta went to the offices of Dunn & Back intending to serve the attorneys. According to Uzeta, the receptionist, Maureen Cox-O'Brien, informed him "nobody at the office is authorized to receive" service on behalf of Robert Dunn or Dunn & Black. Clerk's Papers (CP) at 14. Cox-O'Brien further informed Uzeta that attorneys Dunn and John Black were absent, and she did not identify a time at which they would be in the office. Cox-O'Brien is actually a paralegal at Dunn & Black, not a receptionist. She has never been a personal representative of Dunn & Black and is not otherwise authorized to accept service on behalf of Dunn or Dunn & Black. According to Uzeta, he left the pleadings on the "receptionist['s] desk." CP at 14.

The attorneys never filed an answer to Jeffrey and Anna Wood's complaint. Lawyer Daniel Mooney entered a notice of appearance on behalf of the attorneys in July 2022.

On November 3, 2022, the attorneys filed a motion, entitled "Defendants' Motion for Summary Judgment." CP at 15. Despite captioning the motion as one for summary judgment, the opening section of the motion seeks dismissal of the case "pursuant to CR 12(b)(2) and CR 12(b)(5)," not CR 56. CP at 15. The attorneys asserted that the Woods

never served process on either defendant. The attorneys added that the superior court lacked jurisdiction because more than ninety days had passed since the filing of the complaint. The attorneys requested the case be dismissed with prejudice because it had been over three years since Robert Dunn withdrew from representing the Woods and the statute of limitations barred re-filing.

In their motion, the attorneys cited rules for summary judgment, asserted that the action was "ripe for summary judgment," and requested "the Court enter summary judgment in [their] favor and dismiss Plaintiffs' complaint with prejudice." CP at 17-18, 25. With the motion, the attorneys filed a declaration of Daniel Mooney with exhibits attached, a declaration of Robert Dunn with exhibits attached, and a declaration of Maureen Cox-O'Brien.

Jeffrey and Anna Wood hired attorney Ryan Best to temporarily represent them in response to the attorneys' summary judgment motion. On December 8, 2022, counsel Best filed, on behalf of the Woods, a response to the motion. The response acknowledged the expiration of the relevant statute of limitations period as being on March 22, 2022. On January 13, 2023, the superior court conducted a hearing on the attorneys' motion. At the hearing, the attorneys' counsel, Daniel Mooney, explained to the court "We're here on a motion to dismiss plaintiff's complaint under CR 12 and CR 56 for failure to effect service of process within the required statute of limitations period or the 90-day tolling period provided by statute." CP at 79. Best argued, on behalf of the

5

Woods, that the attorneys had waived their ability to raise the defense of insufficient service of process because (1) they sought affirmative relief by requesting the court dismiss the complaint for insufficient service of process in a summary judgment motion instead of first raising the defense in a CR 12(b) motion or responsive pleading and (2) they failed to timely raise the defense. Mooney responded that the attorneys sought dismissal of the suit as a defensive tactic and did not seek affirmative relief. Counsel also commented on the difficulty of scheduling a hearing because of the busy schedule of the superior court judge.

The superior court later entered an order granting Robert Dunn and Dunn & Black's motion for summary judgment, effectively dismissing the action without prejudice. In the order, the court outlined the pleadings on which it relied in granting the motion. Those pleadings included declarations and exhibits attached to the declarations.

LAW AND ANALYSIS

On appeal, Jeffrey and Anna Wood assert four arguments. First, they effectively served Dunn & Black and Robert Dunn. Second, the attorneys waived the defense of insufficient service of process by first raising it in a CR 56 motion for summary judgment instead of in a responsive pleading or a CR 12(b) motion. Third, the attorneys followed improper legal procedures and protocol before filing their CR 56

summary judgment motion. Fourth, the statute of limitations has not run on their professional malpractice claim since they have yet to discover all of the harm suffered.

## Service

Jeffrey and Anna Wood argue that they properly served Robert Dunn and Dunn & Black. In so arguing, the Woods contend that, under the continuous representation doctrine, the statute of limitations does not accrue until the client suffers harm from the malpractice. This argument goes to their fourth contention and does nothing to establish proper service of process. To our knowledge, the Woods have yet to serve the attorneys. The Woods have presented no affidavit of service.

## Waiver

Jeffrey and Anna Wood argue that the attorneys waived the defense of insufficient service because they neither asserted the defense in a responsive pleading nor in a motion under CR 12(b), as required by CR 12(h)(1). Instead, the attorneys raised the defense for the first time in a CR 56 motion for summary judgment.

Jeffrey and Anna Wood take few steps to analyze whether the attorneys waived the defense of insufficiency of service. Instead, they cite portions of CR 12 and the rule that the defense of insufficient service of process is not waived if it is asserted in either a responsive pleading or a CR 12(b)(5) motion. CR 12(h)(1)(B); *French v. Gabriel*, 116 Wn.2d 584, 588, 806 P.2d 1234 (1991); *Gerean v. Martin-Joven*, 108 Wn. App. 963, 972–73, 33 P.3d 427 (2001). We do not seek to change this rule.

7

No. 39934-6-III,
*Wood, et al v. Dunn & Black, P.S., et al*

CR 12(h)(1)(B) reads in relevant part:

> A defense of . . . insufficiency of service of process is waived . . . if it is neither made by motion *under this rule nor included in a responsive pleading*.

(Emphasis added.) We note that the attorneys have yet to be served. If served, the attorneys would still have the opportunity to raise the defense in their answer.

Regardless, we deem Jeffrey and Anna Wood's argument too technical. The Woods contend that a motion to dismiss for insufficient service must be brought by a responsive pleading or CR 12(b)(5) motion, not a summary judgment motion. Although, the attorneys captioned their motion as one for summary judgment, the opening section of the motion sought dismissal pursuant to CR 12(b)(2) and CR 12(b)(5). CR 12(b)(2) references lack of personal jurisdiction. CR 12(b)(5) mentions lack of sufficiency of process. CR 12(h)(1)(B) does not preclude captioning the motion to dismiss for lack of service as a summary judgment motion. No rule precludes a party from filing two alternative motions, one under CR 12(b)(5) and one under CR 56. To the contrary, CR 12(b)(7) declares in part:

> No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.

The attorneys filed affidavits with their motion. Even if the attorneys had captioned the motion as a motion to dismiss and had only referenced CR 12 in their motion, the filing of affidavits converted the motion to a summary judgment motion.

8

Thereafter, Jeffrey and Anna Wood filed their own affidavits. Thus, the Woods suffered no prejudice and the process remained the same regardless of whether the attorneys captioned their motion as a motion to dismiss or a summary judgment motion.

If the court considers materials outside the pleadings, the CR 12(b)(6) motion becomes a summary judgment motion under CR 56. CR 12(b); *Berst v. Snohomish County*, 114 Wn. App. 245, 251, 57 P.3d 273 (2002). Like CR 12(b)(6) motions, CR 12(b)(2) motions may also be supported by matters outside of the pleadings. "If matters outside the pleadings are presented to the court on a motion to dismiss for lack of personal jurisdiction under CR 12(b)(2) the motion is to be treated as one for summary judgment" brought under CR 56. *Puget Sound Bulb Exchange v. Metal Buildings Insulation Inc.*, 9 Wn. App. 284, 289, 513 P.2d 102 (1973).

Washington courts have ruled that a motion to dismiss for lack of jurisdiction under CR 12(b)(2) converts to a motion for summary judgment, by reason of reliance on declarations and exhibits, without the courts suggesting the defendant violated the proscription of CR 12(b). *State v. LG Electronics*, *Inc.*, 186 Wn.2d 169, 208, 375 P.3d 1035 (2016) (concurring opinion); *Beaman v. Yakima Valley Disposal, Inc.*, 116 Wn.2d 697, 701 n.3, 807 P.2d 849 (1991); *Columbia Asset Recovery Group*, *LLC v. Kelly*, 177 Wn. App. 475, 483, 312 P.3d 687 (2013); *Freestone Capital Partners LP v. MKA Real Estate Opportunity Fund I, LLC*, 155 Wn. App. 643, 653, 230 P.3d 625 (2010). This

reasoning should also apply to motions to dismiss under CR 12(b)(5) on the ground of lack of service.

We suspect that nearly all motions to dismiss for insufficiency of process rely on affidavits because the defendant files an affidavit that he or she has not been served. In turn, the plaintiff files one or more affidavits seeking to prove service. Jeffrey and Anna Wood's proposed ruling could effectively prevent dismissal of a suit for lack of service.

Improper Legal Procedures

Jeffrey and Anna Wood fault the attorneys for engaging in an improper procedure or protocol before filing a CR 56 summary judgment motion. They complain about the length of time between lawyer Daniel Mooney appearing on behalf of the attorneys and the filing of the motion. They murmur about the time passing between the filing of the dismissal motion and the hearing on the motion. They complain that Mooney did not warn them in advance of ineffective service or the running of the statute of limitations. The Woods cite *Lybbert v. Grant County*, 141 Wn.2d 29, 1 P.3d 1124 (2000) as paralleling their appeal.

Jeffrey and Anna Wood concede that defense counsel's conduct in *Lybbert v. Grant County* was purportedly more misleading than steps taken by Daniel Mooney, but assert that the values analysis promoted by the Washington State Supreme Court in *Lybbert* still holds relevance. The Woods add that those values hold more importance when the plaintiff is pro se.

Jeffrey and Anna Wood do not indicate to this court what actions taken in *Lybbert v. Grant County* they believe were more misleading. Grant County engaged in general discovery before seeking dismissal. The county waited a longer period of time before filing its motion. These facts are not present in this appeal.

The Woods otherwise fail to cite authority for this argument. The Woods fail to develop sufficient argument on this issue. A party's failure to provide argument and citation to authority in support of an assignment of error, as required by RAP 10.3, precludes appellate consideration of the alleged error. *In re Dependency of W.W.S.*, 14 Wn. App. 2d 342, 350 n.4, 469 P.3d 1190 (2020).

Jeffrey and Anna Wood suggest that the attorneys' counsel should have warned them between July and November 2022 of the failure to serve his clients. A defendant owes no duty to alert the plaintiff that service was deficient before the expiration of the statute of limitations. *Lybbert v. Grant County*, 141 Wn.2d 29, 37 (2000); *Gerean v. Martin-Joven*, 108 Wn. App. 963, 973-74 (2001).

Statute of Limitations

Jeffrey and Anna Wood argue that the trial court erred in determining that the relevant statute of limitations period began to run on March 22, 2019. Nevertheless, Jeffrey, during the motion hearing before the superior court, declared that he served the summons and complaint on Dunn & Black "on March 21, 2022, the day before the statute of limitations expired." CP at 62. Jeffrey's contention now that the expiration occurred

11

at some later date conflicts with his representation to the superior court. We address the contention nonetheless.

The statute of limitations period for a legal malpractice claim in Washington State is three years, which "period begins to accrue when the plaintiff has a right to seek legal relief." *Cawdrey v. Hanson Baker Ludlow Drumheller, P.S.*, 129 Wn. App. 810, 816, 120 P.3d 605 (2005). Under the discovery rule, the statute of limitations in a legal malpractice action begins to accrue when the client discovers, or in the exercise of reasonable diligence should have discovered, the facts which give rise to his or her cause of action. *Peters v. Simmons*, 87 Wn.2d 400, 406, 552 P.2d 1053 (1976). For the discovery rule to apply, the plaintiff need not know of the legal cause of action itself. *Cawdrey v. Hanson Baker Ludlow Drumheller, P.S.*, 129 Wn. App. 810, 817 (2005). Rather, she must know the facts that give rise to that cause of action. *Gevaart v. Metco Construction, Inc.*, 111 Wn.2d 499, 502, 760 P.2d 348 (1988). A plaintiff need only be aware of the facts underlying the claim. *Cawdrey v. Hanson Baker Ludlow Drumheller, P.S.*, 129 Wn. App. 810, 817 (2005).

A cause of action accrues when the plaintiff knows or should know of some damage. *EPIC v. CliftonLarsonAllen LLP*, 199 Wn. App. 257, 276, 402 P.3d 320 (2017). When a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. *Green v. A.P.C.*, 136 Wn.2d 87, 96, 960 P.2d 912 (1998). The statute

12

of limitations does not toll by the fact that further, more serious harm may flow from the wrongful conduct. *Green v. A.P.C.*, 136 Wn.2d 87, 96 (1998). The claimant need not be aware of the full extent of the damages. *EPIC v. CliftonLarsonAllen LLP*, 199 Wn. App. 257, 276 (2017).

Jeffrey and Anna Wood claim they still do not fully comprehend the damage caused by the attorneys. Although they assert that the statute of limitations should not expire until December 12, 2025, the logical extension of their argument is the running of the statute has not begun because they continue to learn about their harm.

The Woods misapprehend the nature of the discovery rule. The statute of limitations commences to run when the claimant knows of some harm, not the full extent of his harm. We attached Jeffrey Wood's March 12, 2019 letter to Robert Dunn expressing disappointment in the representation as an appendix to this opinion. In the letter, Jeffrey complains about Dunn's representation and the harm caused to him. Thus, the statute of limitations ran at the time that Dunn withdrew from representation on March 22, 2019.

RCW 4.16.170, Washington's tolling statute, provides, in relevant part:

> an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint. . . .

> If . . . service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.

Under RCW 4.16.170, Jeffrey and Anna Wood had until March 22, 2022 to file their legal malpractice claim against the attorneys because that date marks three years from the day Robert Dunn withdrew from representing them. At that time, the Woods had the right to seek legal relief by filing a malpractice action given that they knew of the purported deficiencies in the legal representation Dunn provided, as reflected in the letter Jeffrey sent to Dunn on March 12, 2019. The Woods filed their complaint on March 21, 2022, commencing the 90-day tolling period. The Woods needed to effectuate service of process by June 20, 2022. They did not.

Attorney Fees

The attorneys request an award of attorney fees and costs on appeal, pursuant to RAP 18.9(a). According to the attorneys, the Woods' appeal is frivolous. RAP 18.9(a) provides, in relevant part:

> [t]he appellate court on its own initiative or on motion of a party may order a party . . . who uses these rules for the purpose of delay, files a frivolous appeal, . . . to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court.

An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues on which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal. *Lutz Tile, Inc. v. Krech*,

No. 39934-6-III,
*Wood, et al v. Dunn & Black, P.S., et al*

136 Wn. App. 899, 906, 151 P.3d 219 (2007). This court resolves all doubts to whether

an appeal is frivolous in favor of the appellant. *Lutz Tile, Inc. v. Krech*, 136 Wn. App.

899, 906 (2007).

The Woods' appeal borders on the frivolous. Nevertheless, when resolving all

doubts, we rule otherwise. The Woods' argument on waiver presents a debatable issue,

particularly since no Washington case directly addresses it.

CONCLUSION

We affirm the superior court's dismissal of Jeffrey and Anna Wood's malpractice

suit against Dunn & Black and Robert Dunn. We deny the attorneys reasonable attorney

fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____          _____
Staab, A.C.J.                                                  Cooney, J.

APPENDIX

P.V.F. Worldwide, Inc.
------- E. Harvard Vistas Lane
Newman Lake, WA 99025


March 12, 2019

Mr. Bob Dunn
Dunn and Black Law Office
--- North Post Suite ---
Spokane, WA 99201


Dear Bob,

It disappoints both Anna and me to see that you are so willing to pull the plug on our litigation at such a critical point in this case, just on the eve of when our 9th Circuit appeal is to be submitted.  I just hope we can find an attorney to accept this case and complete our appeal letter by the deadline.  I also hope, that by you and your law firm abandoning us at this point, it does not hurt our chances of the 9th Circuit taking up our appeal.  That would really be unfortunate for us.  This would pretty much doom our ability to be awarded any kind of meaningful settlement.

You had mentioned you have a business to run, as I also have a business to run.  It is common knowledge that you and I have to be paid for our services.  You are a service oriented business, and you bill clients for hours of service.  I am also a service oriented business.  When you, Anna, and I met the very first day you asked what Anna and I wanted from you.  I said, "I would like for you to represent us in our case against Milionis Construction."  You responded with, "No, that is not what I mean.  Do you want to play offense or defense?"  I responded with "Offense."  You said, "Great," that is what I wanted to hear."  Through this entire litigation I have not once experienced, nor have I witnessed what I would perceive as an offensive move or play.  I actually at times found myself arguing or having a difference of opinion with my own counsel.  Not, once did I feel Anna's or my interests were being addressed.  Case in point, a few instances and not limited to:

1.  The site visit with Ryan Poole, You (Bob Dunn), and Mr. Paul Shelton (Independent Contractor hired by Cincinnati).  The purpose of the

site visit was to discuss the elevation issue, and to discuss the possible fixes. The West foundation wall was argued it should not have been stepped down to meet grade. Instead the grade should be raised to ensure a zero entry into the house as the construction plans indicated. I found myself arguing against you and Mr. Shelton on the proposed fixes to the house. I was arguing the foundation wall needed to be raised, you and Mr. Shelton were arguing that a retaining wall could be built to satisfy the fix. First of all, this retaining wall would have come out of the landscape budget, and would have taken the issue out of the settlement litigation. In addition, it would not have fixed the actual problem. The point being, it probably cost me about a thousand dollars for that site visit and it solved nothing. The site visit left me scratching my head as to why I just paid $1 K to argue with my attorney and the independent contractor Mr. Shelton. And to add insult to injury and to my surprise, I get an invoice for approx. $500 for a variance from the county that was initiated by Mr. Paul Shelton. As I stated earlier, Mr. Shelton was the independent contractor for Cincinnati Insurance. Mr. Shelton was being paid for by Cincinnati. So, I can only assume that all expenses incurred by Mr. Shelton would have been paid for by Cincinnati Insurance. So, I was tasked with paying for a county variance which assisted in excusing Milionis Construction from any over height liability of the house, and at the same time cost me $500. And this being and issue to this day has not been resolved.

2. The fact that you did not disclose to Anna and me, the fact that you represented Mr. Milionis in a previous case, and also represented his wife in a litigation case.

3. Additional discovery from my contractor (Edward Smith Construction) was requested by Mr. Paul Shelton, during mediation, without my knowledge and consent. The mediation agreement drafted up at our mediation was that I or Anna were not to have any contact with Mr. Paul Shelton while he was engaged with his independent construction evaluation. So, when he engaged my personal contractor Edwards Smith, without my consent or knowledge, this expense should have been part of the independent investigation. All expenses associated with this discovery request should have been at the expense of Cincinnati. Instead, I was invoiced in excess of $17K for additional discovery work requested by Mr. Paul Shelton. I requested Dunn and Black send this invoice over to Mr. Thorner (our mediator) to be submitted to Cincinnati for payment. I was advised by you and Ryan Poole to pay the invoice as we did not want to upset the apple cart and "Piss" off Cincinnati Insurance at this point. This

17

was an additional $17K of needless expense I should not have been responsible for, but was forced to pay. My counsel should have fought to have these expenses paid by Cincinnati Insurance. My counsel did nothing to satisfy our side in this issue.

4. Piercing the Corporate Vail: Through this entire litigation, you emphasized this is not, and should not be personal. This should be about getting funds to fix the construction defects and move forward with the construction of the house. I brought to you the evidence that would set up the possible argument enabling us to go after Milionis Construction and potential personal assets. The evidence I presented, I felt at first was met with some reluctance. Your stance and argument that this should not be personal, and it would be difficult to get a judge to rule in our favor. But, it was a very strong case that he was doing business, and taking payment outside the corporation structure. It seemed I was battling an uphill battle to persuade my counsel to pursue this avenue. Since no discovery by my attorneys was initiated, I was the one who took on the challenge of discovery and found that the personal checks written to Steve Milionis went to three different accounts. It wasn't until you filed to have these account records provided; we found that two of the accounts were personal accounts. It was into the third account where we found approx. $200K had been deposited. I was told by my counsel, Ryan Poole that the account information was intercepted by Mr. McFetridge (Attorney for Mr. Milionis) and was being withheld from our possession. I would have thought that my counsel should have taken the necessary steps, and demanded that the account information be turned over as a condition of pursuing a stipulated judgment. To this day, I have not seen any of that account information. It is also my belief that this information would have been vital to receive before agreeing to enter into a Stipulated Judgment and accepting Mr. Milionis's total liabilities.

On several occasions, I made offers to convert our agreement for legal services from an hourly basis to a contingency agreement. I was willing to pay a premium to you based on success. You repeatedly rejected these requests, stating that you did not enter into such agreements. I, however, would imagine that many of the suits you have filed with the City were on contingencies. I also feel that when our case changed into a bad faith suit to collect the stipulated judgment, that this should have been an option, especially when Cincinnati began taking such a hard line. I made a huge investment into this case in reliance upon your early assessments of

18

success, and now that Cincinnati is winning, you are not willing to shoulder part of the risk.

In closing, you have invoiced me approx. $320K for services. It is hard for me to see what I have received of value from your services over the past 2-112 years. I cannot hold your product in my hand, or monitor the wise spending of my money. So, excuse me if I have gone on a reflection of some of your services, and what I have purchased. You ask, "When are we going to be paid?' As I have stated to you many times and again this last Friday, 3/8/19, on the phone, I have expended all liquid cash, and am in the process of selling off items that will resort in cash. We sold our home, of 34 years, and all proceeds went to Dunn and Black. I am putting together the sale of my boat. I have other things for sale that should net in the neighborhood of an additional $140K. This is cash that would have been applied to my account. I am now faced with hiring another attorney and paying for a retainer. So, the cash that was slated to go to you and your law firm will need to be diverted. I am just getting started with two projects in Kenya. Upon the completion of those projects, there will be more funds available. We, in no way, have any intentions of not paying you. In fact, we have provided you and your firm with a substantial amount of money, approximately $163,000.00 to this point.

As soon as I am able to get another law firm to step in and take over this case, I will let you know.

Regards
Jeffrey C. Wood

CP at 49-51.